𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

F. W. STOCK & SONS V. OWEN & BARKER.

January 20, 1921.

1. OFFICERS AND AGENTS OF PRIVATE CORPORATIONS.—*Authority of Branch Office of Corporation—Case at Bar.*—A foreign manufacturing corporation opened offices in the name of the company in the city of Norfolk for the sale of its products. The Norfolk office was conducted in the corporate name, the same as that used by the home office, and was thereby held out to the public as having like authority.

   *Held:* That when a contract of sale was made through the Norfolk office which from any cause the corporation could not fill, it could not repudiate the contract, on the ground of the lack of authority in the manager in charge of the Norfolk office.

2. OFFICERS AND AGENTS OF PRIVATE CORPORATIONS.—*Authority of Branch Office of Corporation—Case at Bar.*—A foreign manufacturing corporation opened a branch office in a city in this State for the sale of its products. Plaintiffs placed an order for the purchase of certain goods with the branch office and were told that the order would be referred to the home office for acceptance, and as soon as accepted plaintiffs would be notified thereof. Plaintiffs were so notified by the branch office. In previous dealings between the same parties, no ratification or acceptance had been required, nor any necessity therefor intimated.

   *Held:* That plaintiffs had the right to rely upon the information furnished by the branch office that their order had been accepted.

3. AGENCY.—*Apparent Authority of Agent—Secret Instructions—Case at Bar.*—If, in the instant case, the branch office of defendant be treated as a mere agency with limited authority, under the facts of the case, the apparent authority of the agent was its real authority. Plaintiffs were not bound by any secret instructions or restrictions given to or imposed upon the branch office of which they had no notice.

4. APPEAL AND ERROR.—*Conflicting Evidence—Weight Attached to Findings of Court.*—Upon the trial of a case by the court without the intervention of a jury, where the evidence is con-

flicting, the judgment of the trial court is given the same
weight as the verdict of a jury.

Error to a judgment of the Circuit Court of the city of
Norfolk in a proceeding by motion for a judgment for
damages.   Judgment for plaintiffs.   Defendant assigns
error.

*Affirmed.*

The opinion states the case.

*Hughes, Little & 'Seawell,* for the plaintiff in error.

*D. Lawrence Groner* and *Harper & Goodman,* for the
defendants in error.

Burks, J., delivered the opinion of the court.

F. W. Stock & Sons is a corporation engaged in the mill-
ing business at Hillsdale, Michigan, and manufactures and
sells large quantities of mill feed.   In furtherance of its
business it maintained an office at Norfolk, Virginia, which
was conducted in the corporate name of F. W. Stock &
Sons, and was in charge of Harold Stock.   Owen & Barker
were commission merchants of the city of Lynchburg, Vir-
ginia.   Prior to the present controversy they had bought
mill feed of F. W. Stock & Sons, and their method of doing
business was to ask quotations of F. W. Stock & Sons,
Norfolk, Virginia, and upon receipt of satisfactory quota-
tions to order what was desired of F. W. Stock & Sons,
Norfolk, Virginia.

On July 12, 1919, having previously received quotations,
Owen & Barker ordered by telegram one carload of feed at
the quoted price.   The telegram was addressed to "F. W.
Stock & Sons, Norfolk, Va."   On the same date they re-
ceived a telegram from Norfolk, saying:   "All right, it's a

33

sale," Signed, "F. W. Stock & Sons." On the same day, Saturday, July 12, 1919, but later in the day, Owen & Barker sent two additional telegrams to F. W. Stock & Sons, Norfolk, Va. In one they ordered one carload of mill feed to be delivered about August first, and in the other two carloads to be delivered about August tenth. On Monday morning, July 14, they received a telephone message from the Norfolk office, saying that the last two mentioned orders had been received and referred to the head office at Hillsdale, Michigan, and would be confirmed upon receipt of advices from that place. Later in the day of July 14, they received a telegram from Norfolk, signed F. W. Stock & Sons, in the following words: "All right feed orders booked shipment by August tenth." This telegram was accepted and acknowledged by Owen & Barker by letter dated July 15. Later in the day of July 15, they received from the Norfolk office the following telegram: "Regarding confirmation wired yesterday, mills now advise date for starting very indefinite and impossible for them to ship by August tenth. Will deferred shipment do, if not will have to cancel?" To this telegram Owen & Barker replied by telegraph on the same date: "Upon receipt your confirmation we confirmed to customer; cannot cancel; have mill make supreme effort and fill contract." This telegram was followed by a letter confirming it. This correspondence was followed by further correspondence, chiefly by letter, between F. W. Stock & Sons at the Norfolk and Hillsdale offices on the one side and Owen & Barker on the other, which need not be further noticed than to say that F. W. Stock & Sons were seeking to explain how the mistake had been made and their inability to fill the orders, and Owen & Barker were insisting that if error had occurred it was through no fault on their part, that they had come under obligations to their customers which they were bound to fulfil, that they were willing to accept shipments if they could be made

"anywhere near contract time," and that the contracts should be fulfilled. Not until their final letter of July 31, 1919, did F. W. Stock & Sons, at Hillsdale, deny the authority of the Norfolk office to make the contract. In this they say: "The fact that Norfolk inadvertently and under misapprehension informed you orders were booked, was perhaps unfortunate, but cannot alter our position. That office hadn't our authority to make the sale, and we have asked that they be more careful in future." When the time for delivery expired, Owen & Barker compromised their liability to their customers for non-delivery at a price which they claimed was very favorable to F. W. Stock & Sons, and brought this action to recover the amounts so paid and for their profits. Neither party required a jury, and the case was tried by the court without the intervention of a jury. The trial court gave judgment in favor of Owen & Barker for the amount paid on the compromise, but not for the profits, and to that judgment F. W. Stock & Sons assigns error.

The plaintiff in error assigns two errors: First, that there was no completed contract of sale between the parties; and, second, if there was, the damages are excessive.

[1, 3] The foregoing statement of the facts renders any extended consideration of the law unnecessary. The first intimation Owen & Barker had of any restriction upon the authority of the Norfolk office was the telephone communication of July 14 in which the Norfolk office stated that "the order had been received and referred to the head office at Hillsdale, Michigan, and would be confirmed upon receipt of advices from that place." On the afternoon of the same day the Norfolk office wired the needed confirmation and Owen & Barker, who had awaited the confirmation, then made the sales to their customers, based upon such confirmation. It would be unfair and unjust to permit a manufacturing company to open offices in the name of the company for the sale of its products, and conduct such

sales in its name, and then when a contract of sale is made which from any cause it cannot fill, to repudiate it with impunity, on the ground of the lack of authority in the manager in charge of such office. This is not a case merely of an agent exceeding his authority. The Norfolk office was conducted in the corporate name the same as the home office, and was thereby held out to the public as having like authority. Not only so, but in previous dealings between the same parties, no ratification or acceptance had been required, nor any necessity therefor intimated, and when the suggestion was made in the present case that the orders would be referred to the home office for acceptance, it was accompanied with the statement that as soon as accepted Owen & Barker would be notified thereof. They were so notified by the Norfolk office, and on the faith thereof entered into the contracts which imposed upon them the liability for which the judgment in their favor was rendered. They had the right to rely upon the information furnished by the Norfolk office that their orders had been accepted.

Owen & Barker have dealt with the utmost faith throughout the transaction, and have honestly endeavored to minimize the loss of F. W. Stock & Sons, and the latter has held out its Norfolk office as having authority to make the contracts in suit. If the Norfolk office be treated as a mere agency with limited authority, under the facts of this case, the apparent authority of the agent was its real authority. Owen & Barker were not bound by any secret instructions or restrictions given to or imposed upon the Norfolk office of which they had no notice. *Lysle Milling Co.* v. *Holt & Co.,* 122 Va. 565, 95 S. E. 414, and cases cited.

In *Bronson* v. *Chappell,* 12 Wall. 681, 683, (20 L. Ed. 436) it is said: "Where one, without objection, suffers another to do acts which proceed upon the ground of authority from him, or by his conduct adopts and sanctions

such acts after they are done, he will be bound, although no previous authority exist, in all respects as if the requisite power had been given in the most formal manner. If he had justified the belief of a third party that the person assuming to be his agent was authorized to do what was done, it is no answer for him to say that no authority had been given, or that it did not reach so far, and that the third party had acted upon a mistaken conclusion. He is estopped to take refuge in such a defense. If a loss is to be borne, the author of the error must bear it. If business has been transacted in certain cases, it is implied that the like business may be transacted in others. The inference to be drawn is, that everything fairly within the scope of the powers exercised in the past may be done in the future, until notice of revocation or disclaimer is brought home to those whose interests are concerned. Under such circumstances the presence or absence of authority in point of fact is immaterial to the rights of third persons whose interests are involved. The seeming and reality are followed by the same consequences. In either case the legal result is the same."

[4] The second assignment of error needs no discussion. The evidence on the subject of the damages sustained by Owen & Barker was conflicting, and the judgment of the trial court was in their favor as a part of their claim, and they took no exception to the refusal of the court to grant the residue, and do not in this court assign any cross-error. This ended the controversy. Where the evidence is conflicting, the judgment of the trial court is given the same weight as the verdict of a jury. *Hoster Co.* v. *Stag Hotel Corp.*, 111 Va. 223, 68 S. E. 50.

We find no error to the prejudice of the plaintiff in error, and the judgment of the trial court will, therefore, be affirmed.

*Affirmed.*