# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## SINGER SEWING MACHINE CO. v. GLADYS L. FERRELL.

### March 18, 1926.

1. COMPROMISE AND SETTLEMENT—*Attorney and Client—Attorney's Authority to Compromise in General.*—Generally an attorney at law is but the agent of his client and has no authority, by virtue of his employment as such attorney, to compromise his client's claim.

2. APPEAL AND ERROR—*Compromise and Settlement—Attorney and Client—Attorney's Authority to Compromise in General—Express Authority—Case at Bar.*—In the instant case the question whether counsel for plaintiff had express authority to compromise and settle plaintiff's action against defendant for an alleged tort was settled in favor of plaintiff by the verdict of the jury on conflicting evidence, and therefore, could not be raised on appeal.

3. ATTORNEY AND CLIENT—*Compromise and Settlement—Apparent Authority of Attorney—Case at Bar.*—In the instant case, the question at issue was the apparent authority of the attorney of plaintiff to compromise an action of tort against defendant. The plaintiff testified that the attorney represented her in the tort action and also in a detinue case of defendant against her. She knew that the attorney was acting as her attorney in compromising some matter with defendant; she knew that the detinue action was to be dismissed at the cost of the defendant; she knew that she received a satisfactory sewing machine from defendant and was relieved from the payment of any installments under her old contract. In the presence of defendant's counsel, though not in his hearing, counsel for the plaintiff conferred with her husband in her presence. Nothing whatever took place to put defendant's counsel upon notice that plaintiff was not aware of the scope of the settlement. There was no intimation that a fraud was practiced upon the plaintiff and no suggestion that the compromise was intrinsically unfair.

   *Held:* That the compromise was binding upon plaintiff.

4. PRINCIPAL AND AGENT—*Apparent Authority.*—The apparent authority, so far as third persons are concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no obligation to inquire into the agent's actual authority.

Error to a judgment of the Circuit Court of the city of Portsmouth, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*John N. Sebrell, Jr.*, for the plaintiff in error.

*Harry A. Brinkley* and *J. Allen Blair*, for the defendant in error.

Campbell, J., delivered the opinion of the court.

This was a proceeding by notice of motion for a judgment, brought by the defendant in error, hereinafter called plaintiff, against the plaintiff in error, hereinafter called the defendant, to recover damages from the defendant by reason of an alleged assault and battery committed upon her by an agent of the defendant.

There was a trial by jury which resulted in a judgment in favor of the plaintiff; the trial court entered judgment in accordance with the verdict, and the defendant brings error.

The defendant, upon the calling of the case for trial, plead the general issue, and also filed a special plea of accord and satisfaction. To the plea of the general issue the plaintiff replied generally and filed a replication to the special plea.

On June 1, 1923, plaintiff purchased, or leased, from defendant a sewing machine, which was delivered by an agent of the defendant. As a part of the purchase price the defendant allowed credit for an old machine turned over to it by the plaintiff. A provision in the

Singer S. Mach. Co. *v.* Ferrell, 144 Va. 395. 397

Opinion.

contract was to the effect that if the installments were not paid when due the defendant could enter the premises of plaintiff and repossess the machine. The plaintiff alleges that due to the unsatisfactory condition of the machine she refused to meet the installments when due. Upon the refusal of plaintiff to surrender the machine a warrant in detinue was sued out by defendant to recover possession thereof.

This warrant was dismissed by the magistrate, because the defendant was not present by agent when the case was called for trial, though it appears that the agent of the company appeared three minutes thereafter. A second warrant in detinue was sued out by the defendant, returnable on December 18, 1923. On this date there were present at the place of trial, the plaintiff, her husband, her counsel, R. J. Davis, Wood, agent of the defendant, and John N. Sebrell, Jr., counsel for defendant. On this occasion, Davis informed counsel for the defendant that plaintiff claimed that defendant's agent, on the day that he attempted to retake the machine, had slapped her in the face, and she was contemplating bringing an action for damages. Just what occurred on this occasion may be best set forth in the language of Davis and Sebrell, who testified upon the trial of the tort action.

"R. J. Davis, being duly sworn, on behalf of the defendant, testified as follows:

"Q. You are an attorney at law in the city of Portsmouth?

"A. Yes, sir.

"Q. Been practicing some time?

"A. Yes, sir.

"Q. Did you represent Mr. and Mrs. Ferrell in regard to this transaction?

"A. Yes, sir.

"Q. Were you present, as their attorney, in this matter on the 19th day of December, 1923, when a warrant in detinue for this machine was to be heard?

"A. I won't swear as to the date, but I was present when that warrant in detinue was had.

"Q. You were here in what capacity?

"A. Representing, as I understood, Mr. and Mrs. Ferrell in this suit.

"Q. Do you remember what transpired in the way of settlement of the differences between the persons on that day?

"A. _____.

"Q. Please tell the court and jury?

"A. I want to say first, my position is rather embarrassing, by reason of my friendly relations with Mr. Ferrell. My recollection is Mr. Ferrell had made a statement to me, prior to this matter, with reference to this assault. There was some contention about a contract. Mrs. Ferrell declared she had never signed the contract. The action was on a contract, and she claimed she had not signed, nor her husband. When we met that morning, I think my expression was, to be correct: I said, 'What in the hell are you people trying to do to Mrs. Ferrell, assault her, or trying to take the machine,' and they said that was the first they heard of any alleged assault. I said: 'Why not do this, give them a machine that is satisfactory to Mrs. Ferrell, and let's call the whole business square. Give them a machine that is satisfactory to her, take away the one that is not satisfactory and satisfy the woman, and let's call this whole business square.' I understood it was full settlement of it, and I told this to Mr. Ferrell, and I thought he understood it. He said that he did not understand. He said that he made the statement that if this did not have anything

Singer S. Mach. Co. *v.* Ferrell, 144 Va. 395. 399

Opinion.

to do with the striking of his wife, that they would
accept it.   If he made that statement I have no recol-
lection of his having made it.   I understood the matter
was a complete settlement between the Singer Sewing
Machine Company in the alleged assault, and satisfac-
tory if they would give Mrs. Ferrell this satisfactory
machine.

"By Mr. Sebrell:

"Q. You did have an understanding with me if we
did give her the machine that I would dismiss my suit?

"A. We went on to speak of the cost of the detinue
warrant, and I told you that we would not stand the cost,
and that it had to be a completed matter, that this lady
would have to be satisfied with the machine.   I was
advised that it would be impossible for them to return
the old machine, but that a machine would be given to
Mrs. Ferrell that was satisfactory.

"Q. That was done, as you understand?

"A. Yes.

"Q. Did not you understand when I dismissed my
suit that that also would end the claim of assault?

"Q. That was what you agreed to?

"A. That was my understanding.

"Q. Your agreement with me?

"A. Yes, sir.

"Q. Did you not agree with me after you had a con-
ference with Mr. Ferrell?

"A. I spoke to Mr. Ferrell.

*Cross-Examination.*

"By Mr. Brinkley:

"Q. You had no conference whatsoever with Mrs.
Ferrell?

"A. No; I have no recollection of that. It has been stated she was in court. I did not take the matter up with her.

"Q. The only conversation you had was with Mr. Ferrell?

"A. Yes, sir.

"Q. Did not you tell me this morning on the corner of the street out here that your recollection was rather hazy about the whole matter?

"A. Necessarily in the way of remembering the exact conversation. I am only testifying as to what was understood between us.

"Q. Could you be mistaken as to that, if your recollection is hazy?

"A. I don't think so, Captain.

"Q. Did not Mr. Ferrell approach you several times after that relative to bringing suit against the Singer Sewing Machine Company?

"A. He came and said: 'The old lady ain't satisfied.'

"Q. Did you tell him the matter was settled?

"A. I told him I so understood it. That is my recollection of what I told him.

"John N. Sebrell, being duly sworn, testified as follows:

"I was representing the Singer Sewing Machine as an attorney. I did not know anything about the transaction between the parties until after the second warrant had been issued, when I was requested by the Singer Company to appear on the 19th day of December for the trial of the last one, to appear before the justice and represent the interest of the Singer people. When I came over, I don't know whether I had been informed that Mr. Davis represented the defendant, or not, but finding out that Mr. Davis represented her, he spoke to me in the language which he has used—I will not

repeat it—'What were we trying to do with this lady,' and gave me the first information that the Singer Company agent had been uncivil to Mrs. Ferrell in the least degree. We had heard nothing about that. I told him that was the first I had heard of that, and we would be very glad to make satisfactory settlement with Mrs. Ferrell. There was no reason in the world why Mr. Davis and I—we were both fair men, and we wanted to make a fair settlement, as fair as the law could make. I suggested we would make a settlement, that we would give her a satisfactory machine. I told him that we could not deliver the same or any part of the old machine back, and I told him that we would give her a machine that would be satisfactory. If she objected to Mr. Bunch coming we would have the manager go and give her such machine as would be satisfactory, and that we would dismiss our suit at our own cost and call the whole thing square. He said he would talk with his client, and went out there, and he came back and told me if we would do that he would have the matter ended, and he advised me of the claim they were thinking of, about instituting suit, but that would be settled, the whole matter would be settled if we would see that Mrs. Ferrell had a satisfactory machine. I called Mr. Wood and told him what we had agreed to, and then I said to him to see to it that Mrs. Ferrell got a machine that would be satisfactory to her, after finding out what would be necessary, and if necessary to go there himself and see that she was satisfied, and to send her a satisfactory machine. I had no idea of Mr. Bunch being guilty of the things that they had said he had done, and we did not want to have any of those unpleasant relations. Mr. Davis' recollection is absolutely correct about it. We did settle and dismissed the suit upon the strength of his agreement that it was

in full settlement, and my understanding is the next morning the manager did send up the machine and have a complete settlement. That is my recollection of this matter, and we did not know about this suit for assault being brought against us until later. I am ready to answer any questions you may desire."

It is conceded by counsel for the defendant that though the agents of the defendant emphatically denied the assault and battery upon plaintiff, the contention of plaintiff has been decided in her favor by the verdict of the jury.

[1, 2] The sole question in the case is the binding effect of the agreement entered into by the attorneys. It has been frequently determined by the courts that generally an attorney at law is but the agent of his client and has no authority, by virtue of his employment as such attorney, to compromise his client's claim. *Smock* v. *Dade*, 5 Rand. (26 Va.) 639 16 Am. Du. 780; *Paxton* v. *Steele*, 86 Va. 311, 10 S. E. 1. That Davis, the counsel for plaintiff, had express authority to compromise and settle the action for the alleged tort, was expressly denied by Ferrell, the husband and agent of the plaintiff.

On this conflict of evidence the jury have spoken.

[3] The remaining aspect of the case resolves itself into the question, was there such apparent authority exhibited by Davis to warrant counsel for the defendant in acting thereon? We are of the opinion the question should be answered in the affirmative.

On the question of "apparent authority" there is absolutely no conflict in the evidence adduced. The apparent authority of plaintiff's counsel, when viewed from defendant's standpoint, is fully shown. Plaintiff testified that Davis represented her in both the detinue case and in the tort action; that he was acting as her

Singer S. Mach. Co. *v.* Ferrell, 144 Va. 395. 403

Opinion.

attorney in compromising some matter with defendant. It clearly appears that she knew the detinue action was to be dismissed at the cost of the defendant; that she, in fact, received a satisfactory machine; that she was relieved from the payment of any installments. In the presence of defendant's counsel, though not in his hearing, counsel for plaintiff confers with her husband in her presence.

Nothing whatever took place to put defendant's counsel upon notice that plaintiff was not aware of the scope of the settlement; on the contrary, defendant was unaware that plaintiff did not consider the matter settled until the institution of this action, a few days before the same would have been barred by limitation.

There being no intimation that a fraud was practiced upon the plaintiff, and no suggestion that the compromise was intrinsically unfair, we hold the law and the facts to be with defendant, and that the compromise is binding.

A case directly in point is that of *Black* v. *Rogers*, 75 Mo. 441. In that, as in this, case the attorney was authorized to make a certain compromise, but it was claimed in each that he included in the compromise that which he was not authorized to include. In both cases the attorney consulted with his client relative to the compromise in the presence of the defendant and returned with assent. Sherwood, C. J., said: "The facts in the case show that the attorney for the plaintiff had either the actual or else the apparent authority to make the compromise. * * * There is no pretense that there was any fraud practiced on plaintiff in making the compromise or that plaintiff's attorney had no authority to make a compromise; and the law is well settled that while a compromise made by an **attorney** without authority or in violation of his client's com-

mands will not be enforced to the client's injury, yet if the authority of the attorney be apparent, then his client will be bound, unless the compromise possessed such elements of intrinsic unfairness as to provoke inquiry or imply fraud."

[4] The same principle was declared by this court in *Lysle Milling Co.* v. *Holt & Co.*, 122 Va. 565, 95 S. E. 414, where it is said: "While, as between principal and agent, the scope of the latter's authority is that authority which is actually conferred upon him by his principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third parties ignorant thereof; and, as between the principal and agent and third persons, the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. The apparent authority, so far as third persons are concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no obligation to inquire into the agent's actual authority." 31 Cyc. 1333, and cases cited.

In *Bronson* v. *Chappell*, 12 Wall. 681, 683 (20 L. Ed. 436), quoted with approval in *Stock & Son* v. *Owen*, 129 Va. 260, 105 S. E. 587, it is said: "Where one, without objection, suffers another to do acts which proceed upon the ground of authority from him, or by his conduct adopts and sanctions such acts after they are done, he will be bound, although no previous authority exists, in all respects as if the requisite power had been given in the most formal manner. If he had justified the belief of a third party that the person assuming to

be his agent was authorized to do what was done, it is no answer for him to say that no authority had been given, or that it did not reach so far, and that the third party had acted upon a mistaken conclusion. He is estopped to take refuge in such a defense. If a loss is to be borne, the author of the error must bear it. If business has been transacted in certain cases, it is implied that the like business may be transacted in others. The inference to be drawn is, that everything fairly within the scope of the powers exercised in the past may be done in the future, until notice of revocation or disclaimer is brought home to those whose interests are concerned. Under such circumstances, the presence or absence of authority in point of fact is immaterial to the rights of third persons whose interests are involved. The seeming and reality are followed by the same consequences. In either case the legal result is the same."

In *Virginia Ry. Co.* v. *Stoke*, 134 Va. 192, 113 S. E. 706, it is said: "The powers, however, of even a special agent, in the absence of evidence to the contrary, are usually co-extensive with the 'holding out' by his principal." To the same effect is the holding in *Mutual Life Ins. Co.* v. *Brown*, 137 Va. 278, 119 S. E. 142.

For the reasons stated, the judgment of the trial court will be reversed, the verdict of the jury set aside, and instead of remanding the case for a new trial, judgment will be entered by this court, pursuant to section 6365 of the Code, in favor of the Singer Sewing Machine Company.

*Reversed.*