**William A. HOZIE, and Clelia Hozie, Plaintiffs and Counterdefendants,**

**v.**

**William C. PRESTON, Defendant and Counterclaimant.**

**Civ. A. No. 78–0053(C).**

United States District Court,
W. D. Virginia,
Roanoke Division.

April 9, 1980.

Gary W. Lonergan, Alexandria, Va., for plaintiffs and counterdefendants.

Fred G. Wood, Jr., Charlottesville, Va., for defendant and counterclaimant.

## MEMORANDUM OPINION

TURK, Chief Judge.

Plaintiffs, William A. and Clelia Hozie, citizens of the State of Colorado, filed this suit against William C. Preston, an attorney licensed to practice in the Commonwealth of Virginia, alleging that he failed to adequately represent them in two legal matters. Specifically plaintiff alleges that:

1) Defendant exceeded the authority expressly given him by the plaintiffs in negotiations over a disputed separation agreement, (Count I) and

2) Defendant negligently refused to allow the plaintiffs to review and sign an escrow agreement which had been prepared in anticipation of the sale of certain land owned by them in the Commonwealth of Virginia. (Count II).

Defendant had filed an answer and moves the court to grant summary judgment in his favor as to the first count, asserting that the same is effectively barred by the doctrine of collateral estoppel. The issues have been briefed and argued by counsel, and the matter is now ripe for disposition.

## STATEMENT OF FACTS

In the spring of 1976, the defendant, William C. Preston, was retained by the plaintiffs, William A. and Clelia Hozie, to represent their interest in a dispute in Albemarle County, Virginia, with Karen Hart relating to a separation agreement to which Mr. Hozie was a party. On or about August 4, 1976, defendant, on behalf of his clients, entered into a settlement agreement with the attorney representing Ms. Hart.

This agreement provided, in part, that the Hozies would pay to Ms. Hart the sum of $18,435.00, that the pending suits would be dismissed and that the parties would exchange general releases.

The Hozies refused to abide by this agreement and Ms. Hart filed suit in the Circuit Court of the City of Charlottesville (Action # 1447) asking the court to enforce the settlement agreement by ordering the Hozies to pay her the sum of $18,435.00. The sole issue in said suit was whether or not Mr. Preston had authority from the Hozies to enter into the aforesaid settlement agreement on their behalf. If the jury found that Mr. Preston had such authority then the Hozies would be obligated to pay Ms. Hart the sum of $18,435.00.

After a full and fair litigation of this issue, a jury in the Circuit Court of the City of Charlottesville (Action # 1447) found, on November 18, 1976, for Ms. Hart, and awarded her the sum of $18,435.00.

On July 31, 1978, the Hozies filed this complaint alleging, *inter alia*, that Mr. Preston damaged them by entering into a settlement agreement with Ms. Hart in violation of the express authority given him.

## MERITS OF DEFENDANT'S CONTENTIONS

It is clear beyond question that we must decide this case in accordance with the substantive law of the Commonwealth of Virginia. The case is in federal court solely by reason of the diversity of the citizenship of the parties, and their rights and obligations are concededly governed by Virginia law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *St. Paul Fire and Marine Ins. Co. v. Lack*, 476 F.2d 583 (4th Cir., 1973).

Under Virginia law res judicata, a judicially-created doctrine, rest upon considerations of public policy which favor certainty in the establishment, *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948), demand an end to litigation, and seek to prevent the harassment of parties.

*Pickeral v. Federal Land Bank of Baltimore*, 177 Va. 743, 750, 15 S.E.2d 82, 84–85 (1941). "The doctrine is firmly established in our jurisprudence and should be maintained where applicable." *Ward v. Charlton*, 177 Va. 101, 115, 12 S.E.2d 791, 796 (1941). Res judicata encompasses four preclusive effects, each conceptually distinct, which a final personal judgment may have upon subsequent litigation. These are merger, direct estoppel, bar and collateral estoppel. *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326 n.6, 75 S.Ct. 865, 867 n.6, 99 L.Ed. 1122 (1955) (citing Restatement of Judgments § 45 (1942)).

■ Collateral estoppel [1] is the preclusive effect impacting in a subsequent action based upon a collateral and different cause of action. In the subsequent action, the parties to the first action and their privies are precluded from litigating any issue of fact actually litigated and essential to a valid and final personal judgment in the first action. *Bates v. Devers*, 214 Va. 667, 671, 202 S.E.2d 917, 921 (1974); *also see* Restatement of Judgments §§ 68, 82 (1942).

■ In the precursor to the case at bar, (i. e. the former Charlottesville Circuit Court suit in which Ms. Hart obtained a jury verdict), the Hozies were actual party defendants in the action. The jury verdict represents a valid and final personal judgment. Also, because under Virginia law a client cannot be bound unless his attorney had actual authority, *Singer Sewing Machine Co. v. Ferrell*, 144 Va. 395, 132 S.E. 312 (1926); *Wood v. Virginia Hauling Co.*, 528 F.2d 423 (4th Cir., 1975), the jury in the

first action must necessarily have found that Mr. Preston had such actual authority. Such a finding was essential to the jury verdict.[2] Therefore, all of the requisites of the *Bates* decision are present.

However, historically Virginia had placed restrictions on the applicability of collateral estoppel by requiring the presence of the doctrine of "mutuality," (i. e. the doctrine that one cannot assert collateral estoppel unless he would have been similarly precluded had the prior litigation of the issue reached the opposite result), e. g. *Ferebee v. Hungate*, 192 Va. 32, 36, 63 S.E.2d 761, 764 (1951); *Unemployment Compensation Commission v. Harvey*, 179 Va. 202, 210, 18 S.E.2d 390, 393 (1942). At first glance, this requirement would appear to remove Mr. Preston's right to plead collateral estoppel in the present case, as he was not a party to, and thus could not have been bound by, the result in the first action.

The "mutuality" requirement has, however, been the subject of a great deal of criticism, amelioration and change over the past fifty years. "The modern trend is to discard the mutuality rule as such." *Annotation Comment Note*—"Mutuality of estoppel as prerequisite to availability of doctrine of collateral estoppel to a stranger to the judgment," 31 A.L.R.3d 1044, 1052. The nationwide criticism of the mutuality rule is founded on the basic premise that it simply does not make good sense. "No satisfactory rationalization has been advanced for the requirement of mutuality." *Bernhard v. Bank of America National Trust and Savings Ass'n*, 19 Cal.2d 807, 122

---

1. The term "collateral estoppel" was adopted by the drafters of the Restatement of Judgments to emphasize the vital distinction between its preclusive effect and that of merger and bar. Scott, "Collateral Estoppel by Judgment," in 56 Harv.L.Rev. 1, 2, & 3 n.4 (1942) (Reporter for the Restatement).

2. In the former Action # 1447, Circuit Court of the City of Charlottesville, the following instruction was given:

An attorney had no power to compromise or settle his clients' claims unless he has been given express authority by his clients to do so. An attorney possesses no authority to compromise or settle his clients' claims mere-

ly by virtue of his employment as an attorney. Express authority is that which is definite and explicit and not left to inference or implication.

The burden is on the plaintiff to prove by a preponderance of the evidence that the defendants gave express authority to William C. Preston to settle or compromise the defendants' claims alleged by the plaintiff, and unless you believe that the plaintiff has thus proven by a preponderance of the evidence that such express authority was given to William C. Preston by the defendants, you shall find your verdict in favor of the defendants.

P.2d 892, 895 (1942). In *Bernhard*, the California Supreme Court totally abandoned the requirement of mutuality because once a party has fully litigated an issue of fact and lost, there is no reason why that party should not be bound rather than be able to relitigate.

After a thorough review of the Virginia cases on mutuality, the United States Court of Appeals for the Fourth Circuit concluded that:

> The mutuality rule was probably never a solid wall; exceptions were created under the pressure of the public interest in an end to litigation. The thought was that under certain circumstances once the party against whom the former judgment was asserted had been afforded a full and fair day in court and a reasonable opportunity to be heard on all the relevant issues, *even though against a different adversary*, a plea of estoppel by judgment ought to be recognized. (Emphasis Added). *Graves v. Associated Transport, Inc.*, 344 F.2d 894, 897 (4th Cir., 1965).

Referring to other courts which had faced the question of mutuality, the same court went on to state that:

> The Courts . . . have willingly inquired into the circumstances of the actual case, and time and again they have allowed the plea against a party not having the initiative in the former action whenever they have been satisfied that the party against whom the former judgment was invoked in fact had a realistically full and fair opportunity to litigate the issues in the former action. (Cites omitted).

*Id.* 122 P.2d at 900.

Finally after an extensive review of the Virginia cases, the United States Court of Appeals for the Fourth Circuit concluded:

> As we understand the law of the Commonwealth of Virginia, it is designed to insure that every litigant has an opportunity to be heard on any appropriate issue in a court of law. However, the decisions of the highest court of Virginia convince us that the state also is anxious to insure that once a party has been afforded a chance to assert his claim, further litigation involving that claim is not to be permitted. The state has a legitimate interest in the *final* adjudication of legal disputes, and it is incumbent upon us in this case to give effect to that state policy.

*Id.* at 901–902.

Additionally, the Virginia Supreme Court concluded in *Bates, supra*, 202 S.E.2d at 921 n.7 that:

> The policy underlying mutuality is to insure a litigant that he will have a full and fair day in court on any issue essential to an action in which he is a party. But, as is the case with any other judicial doctrine grounded in public policy, the mutuality doctrine should not be mechanistically applied when it is *compellingly* clear from the prior record that the party in the subsequent civil action against whom collateral estoppel is asserted has fully and fairly litigated and lost an issue of fact which was essential to the prior judgment.

In the case at bar, the court finds that the Hozies have had their full and fair opportunity to litigate the issue of Mr. Preston's authority to enter into the settlement agreement with Ms. Hart. They have admitted that they "vigorously defended the suit," and the jury found against them.

The court further finds that the relitigation of the issue of authority found in the case at bar would necessarily involve the same evidence and a complete retrial of the identical issue litigated by the Hozies in the former suit. The court finds no unfairness in requiring that the parties be bound by a prior adverse adjudication where whose parties were the actual party litigants in the former action. The Hozies have been afforded due process and have had their day in court.

For the above reasons the court will issue an appropriate order granting defendant's motion for summary judgment as to the first cause of action, based on the doctrine of "collateral estoppel."

The clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.