## In re COLLECTING CONCEPTS, INC., Debtor.

### No. 99–60268–T.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Aug. 10, 2001.

---

Harry Shaia, Jr., Spinella, Owings & Shaia, P.C., Richmond, VA, for debtor.

Peter Barrett, Kutak Rock L.L.P., Richmond, VA, Kevin R. Huennekens, Kutak Rock L.L.P., Richmond, VA, Steven C. Mintz, Phillips & Fleckenstein, P.C., Richmond, VA, Lock Pfeiffer, Kutak Rock L.L.P., Richmond, VA, for trustee.

Carl A. Eason, Wolcott, Rivers, Wheary, Basnight, Kelly, Virginia Beach, VA, Kevin M. Fitzpatrick, Fairfax, VA, Angela Jensen, Pocatello, ID, James D. Kepley, Jr., Kepley Broscious, PLC, Richmond, VA, Dean G. Rallis, Jr., Blakeley & Rallis LLP, Los Angeles, CA, Lynn L. Tavenner, Tavenner & Beran, PLC, Richmond, VA, for creditors.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

Hearing was held on July 24, 2001, on the chapter 7 trustee's motion for approval of compromise with five creditors and the trustee's motion to enforce compromise with Citibank, N.A (Citibank). At the conclusion of hearing, the court ruled that the compromise was previously approved as to all parties except Citibank by order entered July 12 and took the trustee's motion to enforce compromise with Citibank under advisement. Based on pleadings, arguments, and evidence the court will deny the trustee's motion to approve and enforce compromise with Citibank because there is an insufficient showing of apparent authority on the part of a Citibank employee who was not counsel of record to negotiate and settle the trustee's preference action.

### I. *Findings of Fact and Procedural History.*

Debtor Collecting Concepts, Inc. filed a voluntary chapter 7 petition on November 18, 1999. On February 1, 2001, the trustee sent twenty-three demand letters to creditors seeking avoidance of alleged preferential transfers made by debtor to creditors within ninety days prior to debtor's filing. On March 28, 2001, the trustee filed an adversary proceeding under 11 U.S.C. § 547(b) to avoid alleged preferential transfers; however, prior to filing the complaint, the trustee commenced negotiations with some creditors, including "settling creditors," IOS Integrated Solutions, Inc. (Integrated Solutions), Pitney Bowes Credit Corporation (Pitney Bowes), Images Unlimited, LLC (Images Unlimited), Separations Unlimited, Inc. (Separations Unlimited), and Citibank, N.A. (Citibank).[1] On April 23, 2001, the trustee filed a motion to approve compromises[2] under Fed.

---

1. The trustee's compromise with Integrated Solutions resulted in Integrated's agreement to pay the estate $1,598.00 or 50% of the demand by the trustee in exchange for the trustee's agreement not to name Integrated a defendant in the preference action. The compromise with Pitney Bowes resulted in Pitney's agreement to pay $2,423.82 or 50% of the demand in exchange for the trustee's agreement not to name Pitney as a defendant in the preference action. The compromise with Images Unlimited resulted in Image's agreement to pay $936.84 or 90% of the demand in exchange for the trustee's agreement not to name Images. The compromise with Separations Unlimited resulted in Separations' agreement to pay $1,499.00 or 90% of the demand in exchange for the trustee's agreement not to name Separations.

2. The trustee's motion set forth his basis for concluding that each compromise would best serve the interests of the estate: an extensive examination of debtor's financial affairs; review of documents; and analysis of the costs, risks and benefits of litigation on the avoidance of alleged preferential transfers. The trustee asserted that review of each transfer, the law and defenses relating to the transfers, and litigation risks favored settlement of each preferential transfer matter and stated that additional expenses and further delay in estate administration that would be incurred in obtaining final judgment against the settling creditors favored settlement. The trustee argued that creditors would benefit from the proposed compromises because each would provide a sum certain to be distributed to them.

R. Bankr.P. 9019 with five settling creditors.

On May 23, 2001, Citibank filed a response to the trustee's motion to approve compromises in which Citibank asserted that "... no compromise settlement has been reached with counsel for the Trustee in this matter." Citibank pled that on April 5, 2001, it advised the trustee that "... Citibank did not feel a settlement was appropriate" and that even after April 5, Citibank and the trustee never further discussed the trustee's potential claim against Citibank. Further, Citibank alleged that "[a]s no pleadings had previously been filed against Citibank, N.A., from which a compromise could arise, the document [trustee's motion to approve compromises] was erroneously set aside to be filed." Citibank requested the court to deny the trustee's motion as to Citibank and that debtor be ordered to file an adversary proceeding if it wished to pursue any claim against Citibank.

At hearing on May 24, 2001, the court approved the motion to compromise with four settling parties and excepted only Citibank from the compromises approved due to Citibank's objection filed May 23, 2001. The compromise matter was continued as to Citibank to June 26.

On May 31, 2001, an affidavit of Peter J. Barrett, Esquire (Barrett) of Kutak Rock, LLP (Kutak Rock) in support of the motion to approve compromise with Citibank was filed by the trustee. The affidavit set forth that on February 1, 2001, demand letters were sent to recipients of preferential payments from debtor and that Citibank received a letter demanding turnover of $7,000.00 paid by debtor within ninety days prior to debtor's filing a chapter 7 petition. According to the affidavit, on March 7, 2001, Barrett received information from Suzanne Roski at Navigant Consulting, Inc. regarding debtor's Citibank Visa credit card which provided evidence of alleged preferential transfers and the possibility of fraudulent conveyances. Barrett then called Dan Shield (Shield) at Citibank on March 7. During that call, Shield stated that Reggie Modem (actually Mott)[3] handled bankruptcy matters for Citibank, so Barrett called Mott. Barrett asserted that he gave Mott the background of the claim against Citibank and Mott asked Barrett if Mott should negotiate a settlement with the trustee. Barrett responded that Mott could negotiate a settlement with him on behalf of the trustee and that he would communicate the settlement to the trustee for final approval.

Barrett offered to settle the claim for 90% of the $7,000.00 amount demanded and stated that Mott waited on the phone while Barrett calculated the proposed settlement of $6,300.00. According to Barrett's affidavit, Mott told Barrett that he would need time to search Citibank's records to determine whether a payment by debtor had been received and stated that Citibank would settle for 90% so long as he could locate payment documentation. On March 21, Mott confirmed with Barrett that Mott had located payment records and agreed that Citibank would pay the trustee $6,300.00. Barrett claimed that he explained that the proposed settlement covered only preferential transfers and that any other avoidable transfers that were discovered by the trustee during the course of investigation would not be covered and after this explanation, Mott asked Barrett for the trustee's address and the payee name for the check. Barrett also recounted in his affidavit that Mott explained to him that receipt of the

---

3. The Citibank employee's name is actually Reggie Mott, not Reggie Modem according to amendments made in subsequently filed pleadings.

check would be delayed because the check was processed out-of-state and then sent to Mott's office prior to being mailed. Finally, Barrett stated that he spoke to Mott on only one additional occasion before April 2001, and during that conversation, Barrett was assured that Citibank's check was being processed and would be mailed shortly.

On June 26, 2001, the continued hearing on the trustee's motion for approval of compromise as to Citibank was held and counsel the trustee and local counsel for Citibank appeared. Citibank questioned the propriety of the trustee's motion to approve a compromise because of the pending dispute as to whether a compromise was reached and instead proposed that the more appropriate procedure would be for the trustee to file a motion to compel approval of a compromise. Local counsel represented that neither he nor counsel of record realized that the court would be conducting an evidentiary hearing on the issue of a compromise with Citibank, as neither had appeared at the previous hearing. Further, because of a scheduling conflict of counsel of record, Citibank was unprepared to proceed with a full evidentiary hearing but attempted to offer into evidence an affidavit of a Citibank employee, Terry Burden[4] in opposition to the trustee's assertion that a compromise was reached as to Citibank and requested a continuance so counsel of record could participate in an evidentiary hearing on whether there was a meeting of the minds on the issue of a compromise with Citibank. The trustee opposed continuance of hearing and maintained that adequate notice of hearing was given; objected to admission into evidence of the Citibank employee's affidavit because it was untimely filed on the eve or day of hearing, was not properly served upon the trustee in advance of or at hearing, and neither counsel nor the Citibank employee was present to make argument or testify; and stated that the trustee was prepared to present evidence of one witness' (Barrett) testimony to support a finding of compromise with Citibank.

The court sustained the trustee's objection to admission of the Citibank employee's affidavit and denied admission of the affidavit into evidence. At the conclusion of hearing, the court expressed concern over whether a settlement had been reached, continued the matter of the trustee's motion for approval of compromise as to Citibank, and directed the trustee to file a motion to compel approval of compromise.

On July 3, 2001, the trustee filed a motion of trustee to enforce compromise with Citibank pursuant to the court's June 26 directive. In the trustee's motion to enforce compromise, he stated that because Citibank denied that a compromise was reached, the issue remaining for the court to decide was not whether a compromise could be enforced, as that inquiry was procedurally premature; rather, the issue was whether a compromise was even reached. According to the trustee's motion, during the June 26 hearing, the trustee presented evidence on whether the parties reached a compromise in the form of Barrett's testimony concerning the course of negotiation. The trustee's motion asserted that all of the elements for an enforceable, valid agreement existed, namely, offer, acceptance and consideration: the trustee offered to compromise the claim against Citibank, Citibank accepted the trustee's offer, and the trustee performed

---

4. The court's records indicate without the benefit of an official court transcript, that Citibank attempted to introduce into evidence the affidavit of Citibank employee, Terry Burden.

under the compromise unlike Citibank, in that, in consideration for payment of 90% of the preferential payment, the trustee omitted Citibank as a defendant in the preferential transfer avoidance adversary proceeding. The trustee's motion requested the court to enforce the compromise as to Citibank and include an award of attorney's fees and costs to the trustee.

## II. Position of the Parties.

### A. Chapter 7 Trustee.

The trustee asserts that compromises were reached with each of the five creditors included in the trustee's motion to approve compromises, including Citibank. At the June 26 hearing, the trustee asserts that the "[t]rustee presented uncontroverted evidence that a compromise was reached" and that "Citibank appeared through local counsel but did not provide any admissible evidence on the issue of whether a compromise was reached." The trustee maintains that the matter boils down to a question of the existence of a binding oral settlement contract between the parties as evidenced by the existence of an offer, acceptance, and consideration and discussion of ethical rules, conflicts, and disqualification of proceedings because to whom the Citibank credit card was issued is tangential and pointless. The trustee suggested that if Citibank sought to dispute its liability and exposure under the trustee's preference action, then Citibank must put on evidence and because it did not, it should not be allowed to attack the trustee's motion for new, tangential and immaterial reasons.

### B. Creditor Citibank, N.A.

Citibank asserts that no compromise was ever reached with Citibank on the issue of the trustee's preference action. Citibank states that there is no need for witnesses or evidence because pleadings are sufficient to deny the trustee's motion to approve and to enforce compromises as to Citibank. Citibank claims that the affidavit and testimony of Barrett of Kutak Rock, counsel for the trustee, is inadmissible in this adversary proceeding under the *Virginia Rules of Professional Conduct* because Barrett is not permitted to participate in any proceeding in which he may ultimately be called to testify. Citibank also alleges that Barrett was told by counsel for Citibank that the Citibank bankruptcy employee, Mott with whom Barrett spoke and purportedly negotiated a settlement was merely a "front line" bankruptcy person with no authority to settle matters. Citibank requests that the court reconsider its decision to disallow the affidavit of Citibank employee, Terry Burden in opposition to the trustee's motion to approve compromise and afford Citibank the leeway to present the affidavit into evidence. Citibank argues that under the trustee's § 547 action, Citibank could not be properly-named a defendant in the adversary proceeding because the credit card at issue was in the name of an individual, Eric White, and not the corporate debtor. Further, Citibank proposes that it could have been named a defendant in an action under § 548 but not § 547 because all of the debt was for individual consumer purposes.

## III. Discussion and Conclusions of Law.

██ When there is a material factual or legal dispute about the existence of a settlement agreement or the authority of a party or agent to enter into a settlement agreement on behalf of its principal, "the trial court must conduct a plenary evidentiary hearing to resolve the dispute." *Columbus–America Discovery Group v. Atlantic Mutual Ins. Co.*, 203 F.3d 291, 298 (4th Cir.2000), *citing Millner v. Norfolk & Western Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir.1981). This court conducted such an evidentiary hearing on June 26 to deter-

mine whether a settlement was reached between the trustee and creditor, Citibank.

■ The fundamental issue to be resolved by the court is whether the trustee has established that he reached a compromise agreement with an individual who had the requisite actual or apparent authority to bind Citibank to the agreement. Therefore, the court's analysis focuses on the basic requirements for finding a valid, enforceable contract: offer, acceptance, and consideration. In this case, the dispute centers on the acceptance prong and the requisite authority to manifest acceptance of a settlement offer.

## A. Agency Law and Apparent Authority.

■ According to fundamental tenets of contract law and principles of agency, a principal is bound when an agent possesses apparent authority. *Goger v. Merchants Bank of Atlanta (In re Feifer Industries, Inc.)*, 155 B.R. 256, 261 (Bankr. N.D.Ga.1993) (*citing Home Materials, Inc. v. Auto Owners Ins. Co.*, 250 Ga. 599, 300 S.E.2d 139, 141 (1983)). The apparent authority of an agent is created as to third parties by establishing the principal's conduct and course of dealing, which as reasonably interpreted, "induces a third party to believe that the agent has certain authority." *Id.* (*quoting Borg–Warner Acceptance Corp. v. Davis*, 804 F.2d 1580, 1582 (11th Cir.1986)). The principal must intend a third party to believe in the agent's authority or at a minimum, to realize that his conduct is likely to create such a belief. *MBA, Inc. v. VNU Amvest, Inc.*, 51 B.R. 966, 973 (Bankr.E.D.Va.1985). "An agent's authority must be conferred by some manifestation by the principal that the agent is authorized to act on the principal's behalf." *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir. 1996), *citing* RESTATEMENT (SECOND) OF AGENCY §§ 7, 8 (1957).

### 1. Third Party's Duty to Ascertain Agent's Apparent Authority.

■ An affirmative duty exists on the part of a third party to ascertain whether an agent has the apparent authority to act on behalf of a principal. *Singer Sewing Machine Co. v. Ferrell*, 144 Va. 395, 132 S.E. 312, 314 (1926) (citations omitted). Agency case law authority is clear that an agent cannot create his own authority to act on behalf of a principal nor can an agent's statements that he has authority to act for another without more, entitle a third party to rely on the purported existence of his agency. *See Auvil*, 92 F.3d at 230, *citing NLRB v. Local Union 1058, UMW*, 957 F.2d 149, 153 (4th Cir.1992).[5]

### 2. Evidence of Apparent Authority.

■ From an evidentiary standpoint, "[a]gents may be deemed to have the requisite authority to bind a principal if the record reflects evidence of 'actual' or 'apparent' authority." *Cell v. Barrow (In re Barrow)*, 87 B.R. 879, 887–88 (Bankr. E.D.Va.1988), *citing Neff Trailer Sales, Inc. v. Dellinger*, 221 Va. 367, 269 S.E.2d 386, 388 (1980). According to this court's case law, "[a] court may construe the existence of 'apparent' authority, if the conduct of the principal reasonably caused a third person to believe that the principal consented to have the act done on his behalf by the alleged agent." *Cell*, 87 B.R. at 888, *citing MBA, Inc.*, 51 B.R. at 973 n. 1; *see also* RESTATEMENT (SECOND) OF AGENCY

---

5. However, once a third party "... has ascertained the apparent authority from which the principal has clothed the agent," the third party is under no further obligation to inquire into the agent's actual authority, as the apparent authority of an agent is the real authority as far as third parties are concerned. *Ferrell*, 132 S.E. at 314.

§ 27 (1958). Further, a general rule of apparent agency provides for an implication that counsel of record has the apparent authority to settle litigation on behalf of his client but this assumption does not extend to non-attorneys or employee agents of a principal. *See Mid–South Towing Co. v. Har–Win, Inc.,* 733 F.2d 386, 390 (5th Cir.1984).

■ In this case, evidence was presented by the trustee through Barrett's testimony at hearing, argument made by the trustee, and Barrett's affidavit, that phone conversations between the trustee and Citibank bankruptcy department employees, Shield and Mott, who were not counsel of record for Citibank occurred over several weeks in March 2001. It was not until April 5, 2001, when the trustee and Citibank began to discuss the disputed existence of a compromise and as late as April 23, when the motion to approve compromise was served on counsel of record for Citibank, that the court is aware of counsel communicating regarding settlement and an insistence on the part of Citibank of the need to observe formalities of apparent authority. Barrett testified that it was three to four weeks after his last communications with Mott that he was first in contact with counsel for Citibank.

Insufficient evidence and legal authority was presented by the trustee to support the argument that a Citibank "front line" bankruptcy department employee who was not counsel of record possessed the apparent authority to act as an agent on the behalf of his employer and to bind Citibank as a principal in any settlement negotiations with a trustee. No record was established by the trustee, who had the burden of proof, to establish that a due diligence inquiry was conducted to determine if Citibank employees, Shield and Mott, possessed the seniority, level of responsibility, actual and/or apparent authority to conclude a settlement for Citibank.[6]

Furthermore, the pleadings indicate that as of April 5, 2001, Citibank states that it informed the trustee that the Citibank employee, Mott, had no authority to negotiate or settle disputes, that no compromise or settlement existed, and that any motion to approve compromise as to Citibank was inappropriate. Citibank explicitly refuted any assumptions made by the trustee of apparent or actual authority on the part of a Citibank employee to negotiate settlement. A course of dealing and actions similar in nature and extent to this series of events have been determined by the Fourth Circuit to be sufficient to give rise to a finding of a lack of apparent authority to settle a case. *See, e.g., Moore v. Beaufort Co., N.C.,* 936 F.2d 159, 164 (4th Cir. 1991), *citing Investors Title Ins. Co. v. Herzig,* 320 N.C. 770, 360 S.E.2d 786, 788 (1987).

■ The record further indicates through Barrett's testimony that Mott asked if Mott should negotiate a settlement directly with the trustee. However, even if the court were to construe such a statement on the part of Mott to convey an apparent authority to negotiate settlements, that statement alone is still insufficient to entitle the trustee as a third party to rely on the representation because an agent cannot create his own authority. *See Auvil,* 92 F.3d at 230 (citations omitted).

At hearing, the trustee also relied on the absence of Citibank in the trustee's preference complaint as some sort of indirect evidence that a settlement agreement

---

6. The pleadings indicate that at least as of April 23, 2001, the trustee was aware of Fitzpatrick serving as counsel of record for Citibank, as Fitzpatrick was included in the limited service list in the certificate of service for the trustee's motion to approve compromises.

must have been reached between the parties to account for Citibank's omission as a named defendant. This is a bootstrap argument that adds nothing to the trustee's position.

On the other hand, the record prepared by Citibank during the cross-examination of Barrett on June 26, highlighted that Barrett never sent a letter to Citibank to confirm the settlement, that Barrett never received or signed anything from Mott to evidence a settlement, that other than his personal notes,[7] Barrett was aware of no other writing evidencing a settlement with Citibank, and Barrett never investigated Mott's authority nor sought any confirmation of Mott's authority to bind Citibank to a settlement. Ultimately, without a signed writing to memorialize the intent of the parties to settle the preference action, the court must base its decision of whether a settlement agreement has been reached on the objectively manifested intentions of the parties. *Moore*, 936 F.2d at 162, *citing Piver v. Pender Co. Bd. of Educ.*, 835 F.2d 1076, 1083 (4th Cir.1987) (citations omitted). Here, there is no strong, objective evidence to indicate that the parties intended to settle the litigation because as stated, there is no writing to document the purported existence of a settlement agreement and its terms, and there is no consistency in the accounts by the parties of the existence of any oral settlement contract.

The court finds that the trustee has failed to establish that there were any reasonable, objective manifestations made to the trustee by various Citibank employees from which he could reasonably conclude that the employees had apparent authority to consummate settlements. The court concludes that the facts do not

support the trustee's conclusion that the proposed settlement of the preference action with Citibank can be justified on principles of apparent authority. Accordingly, the court will deny the trustee's motion to approve and enforce compromise with Citibank because the evidence does not show that the trustee reached an agreement with a Citibank employee with authority to bind Citibank.

A separate order will be entered.

---

7. The record indicates only that Barrett claims in his testimony to have some personal notes of the terms of settlement and potentially also of his phone conversations with Citibank employees, but those notes were never introduced into evidence.