In re FEIFER INDUSTRIES, INC., Debtor.

John J. GOGER, as Trustee in Bankruptcy for the Estate of Feifer Industries, Inc., Plaintiff,

v.

The MERCHANTS BANK OF ATLANTA, McCoy Lumber Company, Standard Chartered Bank, State of Georgia Department of Labor, State of Georgia Department of Revenue, March Construction Company, and Continental Timber Company, Inc., Atlanta Contracting Corporation, Allen Feifer and Bernard Feifer, Defendants.

Bankruptcy No. 90–07472.
Adversary No. 91–6089.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 22, 1993.

John J. Goger, Kirwan, Goger, Chesin & Parks, Atlanta, GA, for plaintiff.

James H. Rollins, Branch, Pike & Ganz, Atlanta, GA, for defendant, McCoy Lumber Co., Inc.

S. Lawrence Polk, Sutherland, Asbill & Brennan, Atlanta, GA, for defendant, Merchants Bank of Atlanta.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court is plaintiff's motion for partial summary judgment and the cross-motion for summary judgment filed by defendant McCoy Lumber Company ("McCoy"). Plaintiff seeks a determination of the validity, extent, and priority of several liens. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). The court will grant plaintiff's motion for summary judgment and deny defendant McCoy's cross-motion.

## FACTS

Prior to filing for bankruptcy, Feifer Industries, Inc. was in the business of manufacturing building trusses. As part of a general business and facility expansion program, debtor participated in a local 1986 Industrial Revenue Bond issue to raise capital. The Developmental Authority of Fulton County ("issuer") issued its revenue bond series 1986, in the aggregate principal amount of $3,000,000. The issuer made loans ("loan agreements") from the pro-

ceeds of the bond issue to provide financing for debtor's manufacturing facilities.

Under the loan agreements, debtor became indebted to First Georgia Bank (now known as First Union National Bank of Georgia, N.A. and hereinafter referred to as "First Union"), as trustee of the bond issue, and Standard Chartered Bank ("Standard"), as the issuer of a stand-by letter of credit. Debtor's obligations to both First Union and Standard were secured by a deed to secure debt[1] and a security agreement.

Under the security agreement, First Union and Standard were each granted a security interest in debtor's equipment, inventory, and sale proceeds resulting therefrom. (Plaintiff's Exhibit "B", p. 1–3). To perfect the security interests of First Union and Standard, a financing statement, UCC–1 No. 656054, was filed in the Superior Court of Fulton County on June 11, 1986. (Plaintiff's Exhibit "C"). First Union and Standard were listed on the financing statement as secured parties. On March 20, 1987, a UCC termination statement signed by an officer of First Union was filed which provided for the termination of UCC–1 No. 656054 dated June 11, 1986. (Plaintiff's Exhibit "D").

In February of 1989, McCoy filed a lawsuit against debtor and Allen Feifer, debtor's president, in the State Court of Fulton County to recover amounts due for lumber sold on account during 1988. Allen Feifer was the guarantor of debtor's obligation that was the subject of that lawsuit. On August 25, 1989, debtor and Allen Feifer consented to an entry of judgment against them in the amount of $152,519.89 on the condition that McCoy enter into a covenant not to levy execution so long as payments on the judgment were made pursuant to an agreed schedule. Based on the consent judgment, McCoy recorded its writ of fieri facias ("fi fa") against debtor and Allen Feifer on September 27, 1989.

On July 21, 1988, Bernard Feifer executed a promissory note in favor of defendant,

the Merchants Bank of Atlanta ("Merchants Bank"), in the principal amount of $200,000 with a maturity date of August 1, 1989. On August 15, 1989, Bernard Feifer and debtor executed a promissory note in favor of Merchants Bank in the amount of $200,000.00, which proceeds were immediately paid to Merchants Bank to satisfy Bernard Feifer's personal obligation under the original note. The August 15, 1989 note was accompanied by a security agreement which granted Merchants Bank a security interest in debtor's equipment and inventory. On September 28, 1989, Merchants Bank filed a UCC–1 financing statement, perfecting its security interest in debtor's equipment and inventory.

Debtor filed its Chapter 11 bankruptcy petition on June 1, 1990. Plaintiff John J. Goger was appointed as the Chapter 11 trustee and so served until succeeding himself as the Chapter 7 trustee upon conversion. On January 23, 1991, plaintiff conducted an auction in which all of debtor's equipment and inventory were sold for approximately $230,000. Thereafter, plaintiff filed this adversary proceeding to determine the validity, extent, and priority of several liens.

Each defendant has claimed at one time an interest in the sale proceeds or has a recorded lien or security interest in debtor's equipment. McCoy's claim to the sale proceeds is based upon its consent judgment and fi fa recorded on September 27, 1989. Merchants Bank's claim to the sale proceeds is based upon its security agreement and financing statement filed on September 28, 1989.

Since the filing of this adversary proceeding defendants Continental Timber, State of Georgia Department of Labor, and Georgia Department of Revenue have stipulated that their respective claims have either been satisfied, are otherwise subordinate to plaintiff, or are entitled to priority of a *deminimis* amount. Defendant March Construction is currently in bank-

---

1. The deed to secure debt granted to First Union and Standard a security interest in the real property that was the site of debtor's operations and improvements thereon. Neither the security deed nor the real property are involved in the present dispute.

ruptcy and plaintiff does not seek any relief as to it at this time.

Pursuant to an order of this court dated July 1, 1992, Standard assigned to plaintiff for the benefit of debtor's estate the "right, title, and interest in and to [Standard's] security agreement and financial statement" filed on June 11, 1986, "as well as its claim as a secured party to the equipment sales proceeds...." On August 7, 1992, plaintiff filed a motion for partial summary judgment seeking to establish a secured claim to the sale proceeds which has priority over the claims of McCoy and Merchants Bank (collectively referred to as "defendants"). Plaintiff asserts in the alternative that the estate can avoid McCoy's judgment lien and Merchants Bank's security interest pursuant to the provisions of 11 U.S.C. §§ 547 and 548. Along with his motion, plaintiff has filed a statement of uncontested facts and several exhibits. Merchants Bank responded by filing a statement of material facts as to which a genuine issue exists and several exhibits. In addition to responding to plaintiff's motion, McCoy filed a cross-motion for summary judgment along with its statement of uncontested facts.

## DISCUSSION

Federal Rule of Civil Procedure 56, made applicable by Bankruptcy Rule 7056, provides for the granting of summary judgment if "... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it "... might affect the outcome of the suit under the governing (substantive) law...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). A dispute of fact is genuine "... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir.1982); *United States Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir.1975).

In determining whether there is a genuine issue of material fact, the court must view the evidence in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir.1985); *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir.1984). The moving party must identify those evidentiary materials listed in Federal Rule 56(c) that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *see also* Fed. R.Civ.P. 56(e). Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Coats & Clark*, 929 F.2d at 608.

First, the court will consider whether plaintiff as the Chapter 7 trustee has the authority to acquire and preserve a senior creditor's security interest for the benefit of debtor's estate. Plaintiff contends that pursuant to the court order of July 1, 1992, he acquired and is entitled to assert for the benefit of debtor's estate Standard's valid perfected security interest in the sale proceeds of debtor's personal property. However, McCoy contends that plaintiff has no authority under state law or bankruptcy law to acquire Standard's security interest and use it to the detriment of junior lienholder interests.

A hearing was conducted on May 14, 1992, in which the court considered plaintiff's motion to approve a compromise and settlement of claims against Standard and the law firm of Jones, Day, Reaves & Pogue. Several creditors including McCoy and Merchants Bank objected to the proposed compromise and settlement. After considering these objections, the court by order of July 1, 1992 approved plaintiff's proposed settlement determining that the

settlement was "in the best interests of the estate and its creditors." McCoy now admits that fact. (McCoy's Reply Brief in Support of its Cross–Motion, p. 6).

■ Pursuant to the settlement, Standard assigned its security interest to plaintiff for the benefit of debtor's estate. McCoy's contention that plaintiff may not acquire such senior secured claim to the detriment of junior creditors is without merit. The Georgia law cited by McCoy is not applicable. Plaintiff acquired his interest in his capacity as the representative of debtor's estate pursuant to a court approved compromise and settlement. As such, it is preserved pursuant to that court approved settlement for the benefit of the estate. While 11 U.S.C. § 551 provides for the automatic preservation for the benefit of the estate of avoided transfers or liens, it does not prohibit the same result by consensual resolution of such issues. On the contrary, compromise and settlement is encouraged with the requirement of court approval, after notice and hearing, if in the best interests of the estate. *See* Fed. R.Bankr.P. 9019(a); *In re SPM Manufacturing Corp.,* 984 F.2d 1305, 23 BCD 1529 (1st Cir.1993). Even if an order is required, the order approving the compromise and settlement is sufficient. The court concludes, therefore, that plaintiff's acquisition of Standard's claim is permitted and proper.

■ McCoy also contends that plaintiff has no authority to purchase claims for the estate. However, plaintiff did not purchase Standard's claim. Instead, plaintiff took an assignment of Standard's claim pursuant to a court approved compromise and settlement. Accordingly, McCoy's contention is without merit.

The court will next consider whether the estate has priority in and to the sale proceeds over McCoy and Merchants Bank. This determination depends on whether the security interest assigned to plaintiff for the benefit of debtor's estate is a valid perfected security interest. Under Georgia law, which has adopted the Uniform Commercial Code, Standard's security interest in debtor's personal property is perfected by the filing of a financing statement. *See* O.C.G.A. § 11–9–302(1). "Presentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer constitutes filing under this article." O.C.G.A. § 11–9–403(1).

Under the subject security agreement, both First Union and Standard were granted a security interest in debtor's personal property. Financing statement UCC–1 No. 656054 was then prepared listing First Union and Standard as secured parties. Upon the filing of this financing statement, Standard properly perfected its security interest in debtor's personal property. *See* O.C.G.A. §§ 11–9–302(1) and 11–9–403(1).

■ In determining priority, § 11–9–312(5)(a) provides that:

[c]onflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time. the security interest is first perfected, whichever is earlier, *provided that there is no period thereafter when there is neither filing nor perfection.*

O.C.G.A. § 11–9–312(5)(a) (emphasis supplied). McCoy and Merchants Bank contend that when First Union filed the termination statement on March 20, 1987, Standard's interest in debtor's personal property became unperfected. *See* O.C.G.A. § 11–9–404(1) and (2). As a result, defendants contend that plaintiff, as representative of debtor's estate, does not hold a secured claim with priority to the sale proceeds. Plaintiff contends, however, that the filing of the termination statement by First Union did not affect the perfected status of Standard's security interest in debtor's personal property because First Union did not have actual or apparent authority to file a termination statement on behalf of Standard.

All of the parties cite the Eleventh Circuit's decision in *Borg–Warner Acceptance Corp. v. Davis,* 804 F.2d 1580 (11th Cir. 1986), in support of their positions. In *Borg–Warner,* C. Welborn Davis ("Davis"),

an equipment dealer, sold Dwayne McDonald ("McDonald") certain farm equipment. McDonald granted a security interest in the farm equipment to Davis who subsequently assigned that security interest to Borg–Warner Acceptance Corp. ("BWAC"). BWAC perfected its security interest in the farm equipment on July 30, 1980, by properly filing a financing statement. McDonald refinanced the farm equipment through the Farmers Home Administration ("FmHA") granting FmHA a security interest which was perfected by the filing of a financing statement on February 12, 1981. As a result of the refinancing, McDonald delivered payment to Davis who failed to remit said payment to BWAC in satisfaction of its debt. On April 1, 1981, Davis executed a termination statement, allegedly on behalf of BWAC.

The district court held that Davis had the apparent authority to accept McDonald's payment and that the security interest held by FmHA had priority because BWAC's security was extinguished by Davis's termination statement. On appeal, the Eleventh Circuit vacated the district court's order granting summary judgment in favor of McDonald concluding that there was a question of fact as to Davis's apparent authority to accept McDonald's payment and to terminate BWAC's security interest. *Borg–Warner*, 804 F.2d at 1583. The court noted that the question of FmHA's priority to the farm equipment is contingent upon the resolution of Davis's apparent authority. *Id.*

 Under O.C.G.A. § 10–6–51, a principal is bound by the acts of its agent within the scope of its authority. A principal is also bound when the agent, although lacking actual authority, possesses apparent authority. *Home Materials, Inc. v. Auto Owners Insurance Co.*, 250 Ga. 599, 601, 300 S.E.2d 139 (Ga.1983). Apparent authority of an agent is created as to a third party by establishing a principal's conduct and course of dealing "which, reasonably interpreted, induces the third party to believe that the agent has certain authority." *Borg–Warner*, 804 F.2d at 1582

(citing *Home Materials,* 250 Ga. at 601, 300 S.E.2d 139).

In the present case, the parties have stipulated that there is no written or parol evidence regarding the actual authority of either Standard or First Georgia Bank, now known as First Union, to terminate the subject financing statement. (Additional Stipulations of Fact, ¶ 1). With regard to whether First Union possessed apparent authority to terminate Standard's security interest, no evidence has been presented to show a course of dealing between Standard and First Union which reasonably raises a factual issue of apparent authority. The argument is made that the naming of both First Union and Standard as secured parties on the same security agreement and financing statement somehow implies that one has the authority to act for the other. However, no legal authority has been presented to support this argument.

The financing statement is a standard UCC–1 form, which contains the names of both First Union and Standard as secured parties. By providing for the designation of "[s]ecured party(ies) and address(es)", this form clearly contemplates the listing of more than one secured party. The financing statement contains no language, however, which would indicate that an agency, partnership or joint venture exists between the two parties. The fact that both parties' names appear on the same document does not evidence either actual or implied authority of one party to act as agent for the other. Likewise, the subject security agreement neither grants such authority nor references an agency relationship.

In situations where a corporation releases a security interest, the signature of an officer of the corporation "... without the necessity of the corporation's seal, shall be conclusive evidence that said officer ... is duly authorized to execute and deliver the same." O.C.G.A. § 14–5–7(b). The Attorney General of Georgia has opined that this section applies to the release of instruments securing interests in real property and interests created under Article 9 of the UCC. 1986 Op.Att'y Gen. No. 86–17. The

First Union officer who signed the termination statement was duly authorized to terminate or release First Union's security interest in debtor's personal property. There is no evidence, however, establishing or even indicating that this officer was authorized to terminate Standard's security interest. Thus, no genuine issue of material fact as to First Union's authority to act for Standard is presented. The court concludes therefore that First Union did not have either actual or apparent authority to terminate Standard's security interest.

■ McCoy contends that because the UCC is a system designed to give notice to third parties, Standard's security interest became unperfected once the subject financing statement was terminated and removed from the record. However, the Official Comment to U.C.C. § 9–407 provides that:

under Section 9–403(1) the secured party does not bear the risk that the filing officer will not properly perform his duties: under that section the secured party has complied with the filing requirements when he presents his financing statement for filing and the filing fee has been tendered or the statement accepted by the filing officer.

*See also In re Air Vermont, Inc.*, 40 B.R. 323, 334 (Bankr.D.Vt.1984). By presenting the subject financing statement in accordance with O.C.G.A. § 11–9–403(1), Standard performed all necessary steps under O.C.G.A. §§ 11–9–302(1) and 11–9–403(1) to perfect its security interest in debtor's personal property.

First Union's termination statement lists only "First Georgia Bank," its former name, as the secured party whose interest was terminated. (Plaintiff's Exhibit "D"). Nothing on the face of this termination statement even remotely suggests that any interest other than that of First Union, formerly known as "First Georgia Bank," was to be terminated. There is no evidence

that First Union acted or purported to act for or as an agent of Standard. In fact, Standard is not mentioned in the termination statement. Thus, Standard did not lose its perfected status because of the clerk's decision to remove the financing statement from the record based on First Union's termination statement.[2] The court concludes, therefore, that First Union's termination statement only terminated its security interest in debtor's personal property.

For the foregoing reasons, the court concludes that Standard's security interest in debtor's personal property was not rendered unperfected by the termination statement. Therefore, as trustee for debtor's estate, plaintiff holds a valid perfected security interest in the subject sale proceeds which has priority over the claims of McCoy and Merchants Bank.

The foregoing determinations render moot all issues regarding the avoidance of McCoy's judgment lien and Merchants Bank's security interest. Accordingly, it is

**ORDERED** that plaintiff's motion for partial summary judgment is **GRANTED** and plaintiff, as the Chapter 7 trustee for debtor's estate, has a valid perfected security interest in and to all of the subject sale proceeds which has priority over the claims of McCoy and Merchants Bank. Defendant McCoy's cross-motion for summary judgment is **DENIED.**

The clerk is directed to serve a copy of this order upon plaintiff's and defendants' counsel.

IT IS SO ORDERED.

---

**2.** The court expresses no opinion with regard to whether the court clerk rightfully or wrongfully removed the subject financing statement from the record. This determination is not relevant to the issue of whether First Union had the authority to terminate Standard's security interest.