**In the Matter of THOMASTON MILLS, INC., a Georgia Corporation, Debtor.**

**No. 01–52544 RFH.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

May 31, 2002.

Brad A. Baldwin, Jones, Day, Reavis & Pogue, Atlanta, GA, for Thomaston Mills, Inc.

Jessee H. Austin, III, Paul, Hastings, Janofsky & Walker, Atlanta, GA, Mark A. Kelley, Kitchens, Kelley, Gaynes, Atlanta, GA, for Foothill Capital Corporation.

Richard B. Herzog, Jr., Nelson, Mullins, Riley & Scarborough, Atlanta, GA, for Official Committee of Unsecured Creditors.

Donald Rothman, Riemer & Braunstein, Boston, MA, for Back Bay Funding, LLC.

Mark M. Maloney, King & Spalding, Atlanta, GA, for SunTrust Lenders.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

The Foothill Lenders [1] ("Foothill") filed on December 17, 2001, its limited objections to motions by Thomaston Mills, Inc., Debtor, for authorization to sell certain real property. Foothill's objections came on for a hearing on February 6, 2002. The Court, having considered the record and the arguments of counsel, now publishes this memorandum opinion.

Debtor is a Georgia corporation with headquarters in Thomaston, Georgia. Debtor was in the business of manufacturing and marketing textile products until it ceased operations in late 2001.

Debtor, prior to filing for bankruptcy relief, primarily financed its operations through loans from Foothill and the Sun-Trust Lenders ("SunTrust").[2] Foothill and SunTrust entered into an Intercreditor Agreement dated July 27, 1999. The fourth paragraph of the Intercreditor Agreement provides, in part, as follows:

> WHEREAS, Agents [Foothill and SunTrust] desire to enter into this Intercreditor Agreement to (i) confirm the relative priority of the security interests of each Creditor (as defined below), or any of them, in the assets and properties of Debtors, (ii) provide for the orderly sharing among Creditors, in accordance with such priorities, of proceeds of such assets and properties upon any foreclosure thereon or other disposition thereof, and (iii) provide for such further covenants and agreements as are set forth herein;

The Intercreditor Agreement provides that SunTrust acknowledges that Foothill has first priority liens on Debtor's personal property and second priority liens on Debtor's real property. Foothill acknowledges that SunTrust has first priority liens on Debtor's real property and second priority liens on Debtor's personal property.

Debtor, through its president and CEO, signed an Acknowledgment of the Intercreditor Agreement.

Debtor had financial problems and filed a petition under Chapter 11 of the Bankruptcy Code on June 19, 2001. Debtor began winding down its operations and liquidating its assets. Debtor will not reorganize as a going concern.

Debtor filed on October 24, 2001, a motion for court approval of an agreement it had reached with SunTrust. SunTrust asserted a secured claim against Debtor for about $5.68 million. Debtor believed that it had significant surcharge claims against the real property which secured Sun-Trust's claim. Debtor and SunTrust reached an agreement whereby Debtor would pay $4.17 million to SunTrust upon liquidation of five parcels of real property. SunTrust would assign the balance of its unpaid claim ($1.51 million) and its first priority liens on three other parcels of real property to Debtor for the benefit of Debtor's estate.[3] Debtor would forego any 11 U.S.C. § 506(c) surcharges against Sun-Trust's interest in the real property. No objection to the motion was filed.[4] The

---

1. The Foothill Lenders are Foothill Capital Corporation, General Electric Capital Corporation, and Back Bay Capital Funding LLC.

2. The SunTrust Lenders are SunTrust Bank, Atlanta; Wachovia Bank, N.A.; and Bank of America, N.A.

3. *See Goger v. Merchants Bank of Atlanta (In re Feifer Industries, Inc.),* 155 B.R. 256 (Bankr.N.D.Ga.1993) (bankruptcy trustee, through a court approved compromise and settlement, can acquire and preserve a senior lien for the benefit of the estate).

4. The certificate of service shows that the motion was served on the Foothill Lenders.

Court entered an order on November 20, 2001, approving Debtor's motion. Thus, under the agreement, SunTrust assigned to Debtor its claim of $1.51 million and its first priority liens and security interest on the three parcels of real property.[5]

The Court entered on November 28, 2001, a final cash collateral order authorizing Debtor to use certain cash collateral of Foothill. Foothill consented to the order.

Debtor filed on November 27 and 28, 2001, motions to sell the three parcels of real property and certain personal property [6] free and clear of all liens, claims, and encumbrances. Debtor proposed to use the sale proceeds to pay the secured claims owed to SunTrust (or its assignee) and Foothill, according to the priority of their liens. SunTrust, prior to the assignment to Debtor, held first priority liens and Foothill held second priority liens on the real property. Foothill filed on December 17, 2001, limited objections to Debtor's motions to sell. Foothill contends that once the secured claim of SunTrust was satisfied, it had first priority liens on the three parcels of real property and that it should receive the sales proceeds.[7] The Court, after a hearing, entered orders on December 18, 2001, authorizing the sales, but reserved ruling on whether Debtor or Foothill is entitled to the sales proceeds.

A hearing on Foothill's limited objections was held on February 6, 2002. Debtor's counsel advises that the liquidation of Debtor's remaining assets will not satisfy in full Foothill's claims. Foothill contends that the liens that Debtor holds through the assignment from SunTrust are subordinate to Foothill's liens. The Court will consider, in turn, each of Foothill's arguments.

*Intercreditor Agreement*

■ The Intercreditor Agreement was entered into by Foothill and SunTrust.[8] Debtor signed an Acknowledgment to the Intercreditor Agreement, which provides, in part, as follows:

(i) although it [Debtor] may sign this Acknowledgment it [Debtor] is not a party to the foregoing Intercreditor Agreement and does not and will not receive any right, benefit, priority or interest under or because of the existence of the foregoing Intercreditor Agreement,

Foothill contends that under this provision:

The Foothill Lenders assert that upon the assignment by the SunTrust Agent of a portion of its remaining claims against the Debtor, under the terms of the Intercreditor Agreement, the Foothill Lenders are entitled to payment of the Sale Proceeds by application of the unambiguous terms of the Intercreditor Agreement. Pursuant to the terms of the Intercreditor Agreement, and the Acknowledgment attached thereto, it is clear that the Debtor cannot "receive any right, benefit[,] priority or interest

---

5. Simply stated, SunTrust would receive $4.17 million upon the liquidation of five parcels of real estate. Debtor would, through the assignment, have a secured claim of $1.51 million secured by the remaining three parcels of real property.

6. Foothill held the first priority liens on Debtor's personal property. The priority of Foothill's lien on the personal property is not in dispute.

7. Foothill's counsel, at the hearing on February 6, 2002, stated that Foothill does not contest the assignment from SunTrust to Debtor. Foothill does contest the relative priority of the liens held by Foothill and Debtor.

8. Wachovia Bank, N.A. also was a party to the Intercreditor Agreement.

under or because of the existence of the foregoing Intercreditor Agreement". As a result, even though the Debtor may receive by way of assignment the Sun-Trust Agent's claims and interest, it cannot receive these claims and interest such that the Debtor can retain those funds prior to payment of any remaining claims and interest of the Foothill Lenders. The Debtor has agreed that the Sale Proceeds, which are proceeds of the Foothill Lenders' collateral, are to be paid to the Foothill Lenders before the Debtor may take any payment thereof. The Debtor is, by its express assent to and acknowledgment of the terms and conditions of the Intercreditor Agreement, estopped from receiving any sale proceeds of the Foothill Lenders' collateral unless and until the claims of the Foothill Lenders have been paid in full. Foothill's supplemental brief, p. 10–11, Docket No. 250 (filed Feb. 6, 2002).

The Court is not persuaded by Foothill's argument. In the Court's view, the Acknowledgment simply provides that Debtor was not a party to the Intercreditor Agreement and that Debtor would not receive any right, benefit, priority, or interest *under or because of* the Intercreditor Agreement.

Debtor does not assert any interest in the real property or the sales proceeds *under or because of* the Acknowledgment of the Intercreditor Agreement. Rather, Debtor contends that its interest arises under the court authorized settlement agreement with SunTrust.[9]

*Replacement Liens*

■ The Court entered a final cash collateral order on November 28, 2001. Foothill consented to the order. The order authorized Debtor to use certain cash collateral that is subject to Foothill's first priority liens.[10] The cash collateral order provides, in part, as follows:

11. In addition to the existing rights and interests of the Foothill Lenders in the Cash Collateral and for the purpose of attempting to provide adequate protection for the interests of the Agent, the Co-Agents and the Foothill Lenders, the Agent, on behalf of itself, the Co-Agents and the Foothill Lenders, is hereby granted, as security for the amount of Cash Collateral used by the Debtor, a valid, perfected and enforceable security interest (the *"Replacement Liens"*) equivalent to a lien granted under the Section 364(c) of the Bankruptcy Code in and upon all of the assets of the Debtor in existence prior to the Petition Date and created after the Petition Date, including without limitation, all of the Debtor's accounts, contract rights, inventory, machinery and equipment, general intangibles, real property, and such other collateral in which the Agent on behalf of itself, the Co-Agents and the Foothill Lenders had an interest prior to the initiation of this Chapter 11 case (*but not including claims or causes of action arising solely under the Bankruptcy Code,* including under Section 544, 547, 548 and 553) and whether such property was owned on the Petition Date or thereafter created, acquired or arising, and all improvements, additions and extensions thereto, all replacement thereof, all books and records with respect thereto and all products and proceeds of the foregoing, specifically including any proceeds of the foregoing deposited into bank accounts opened by

---

9. Foothill admits that Debtor properly obtained court approval of the settlement agreement between Debtor and SunTrust.

10. The cash collateral primarily was personal property in which Foothill held first priority liens.

the Debtor after the Petition Date and the accounts themselves, which Replacement Liens shall be subject only to (a) Professional Fee Carve Out and a Stay Bonus Carve Out (as such terms are defined below), and (b) the security interests of the Agent on behalf of itself, the Co–Agents and the Foothill Lenders in the same order of priority, but subject to the Intercreditor Agreement *and any properly perfected senior liens as such interests existed on the Petition Date.* (Emphasis added).

Final cash collateral order, p. 6–7, Docket No. 213 (entered on Nov. 28, 2001).

Section 11 of the cash collateral order provides that Foothill would have replacement liens on all prepetition and postpetition assets of Debtor. Section 11, however, provides that the replacement liens do not attach to . claims or causes of action arising solely under the Bankruptcy Code. Section 11 also provides that the replacement liens are subject to any prepetition senior liens.

The sales proceeds at issue arose from the sale of Debtor's real property. SunTrust assigned its first priority liens to Debtor in exchange for Debtor's agreeing to waive all potential section 506(c) surcharges against SunTrust's interest in the real property. Section 506(c) surcharges arise solely under the Bankruptcy Code. The cash collateral order provides that Foothill's replacement liens are subject to prepetition senior liens. SunTrust assigned to Debtor its properly perfected first priority liens that existed when Debtor filed for bankruptcy. The Court can only conclude that Foothill's replacement liens do not attach to the sales proceeds.

*Administrative Superpriority Claim*

■ Foothill asserts that the cash collateral order gave it an administrative su-

perpriority claim.[11] Section 13 of the cash collateral order provides as follows:

13. In addition to the Replacement Liens granted to the Agent on behalf of itself, the Co–Agents and the Foothill Lenders pursuant to this Final Order, the Agent on behalf of itself, the Co–Agents and the Foothill Lenders is hereby granted an administrative claim under Sections 503(b)(1), 507(a), and 507(b) of the Bankruptcy Code (the *"507(b) Claims"*) for the amount by which adequate protection afforded herein for the Debtor's use of Cash Collateral proves to be inadequate. Such 507(b) Claims shall be allowed and have priority as is otherwise provided for by the Bankruptcy Code, subject to any party-in-interest's rights to contest or otherwise object to any allowance of such 507(b) claims.

Final cash collateral order, p. 7–8, Docket No. 213 (entered on Nov. 28, 2001).

Foothill contends that it has an administrative superpriority claim on the sales proceeds because it will not be paid in full. Debtor notes that the Court has not determined that Foothill is not adequately protected. Debtor contends, therefore, that this issue is not ripe for determination. If Foothill has a valid administrative superpriority claim, that claim should be asserted when the first distribution is to be made in Debtor's bankruptcy case. The Court then will be able to determine if the adequate protection provided Foothill was inadequate.

*Cash Collateral Order*

■ Foothill contends that the cash collateral order requires Debtor to pay to Foothill any excess sales proceeds from the liquidation of Foothill's collateral. Foothill contends that the sales proceeds at issue are not needed by Debtor since all

11.  *See* 11 U.S.C.A. § 507(b) (West 1993).

expenses incurred during the bankruptcy case have been paid from Foothill's cash collateral. Foothill relies upon section 6 of the cash collateral order, which provides as follows:

6. The Foothill Lenders have consented to the Debtor's continued use of a limited amount of Cash Collateral for a specified time on the express terms and conditions set forth in this Final Order, *provided* that any Cash Collateral received on account or from the Foothill Collateral in excess of that needed to conduct the Debtor's business as set forth in the Budget attached hereto as Exhibit "A", is to be immediately paid to and retained by the Agent for the benefit of the Foothill Lenders and applied to the obligations owed to the Agent, the Co–Agents and the Foothill Lenders pursuant to the terms of the Prepetition Loan Agreement. The Debtor reserves the right on behalf of itself and its estate to request a reallocation of any payments or amounts applied to the Foothill Lenders' claims if it is determined that such claims are undersecured.

Final cash collateral order, p. 4, Docket No. 213 (entered on Nov. 28, 2001).

SunTrust assigned to Debtor's bankruptcy estate its claim of $1.51 million along with its security interests and first priority liens. Assignment is defined in Black's Law Dictionary as follows:

**Assignment**. The act of transferring to another all or part of one's property, interest, or rights. A transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein. It includes transfers of all kinds of property, including negotiable instruments. The transfer by a party of all of its rights to some kind of property, usually intangible property such as

rights in a lease, mortgage, agreement of sale or a partnership.

Black's Law Dictionary 119 (6th ed.1990).

SunTrust held the first priority liens on Debtor's real property. SunTrust assigned its first priority liens to Debtor. Thus, Debtor's bankruptcy estate holds the $1.51 million with the same rights and interests as held by SunTrust. The Court is persuaded that Debtor holds, for the benefit of its estate, the first priority liens and rights in the $1.51 million.

Debtor's motion for court approval of the settlement with SunTrust was served on Foothill. Foothill did not object to the terms stated in the motion. Paragraph 12 of the motion provides, in part: "The Debtor shall be able to collect the Assigned Claim for the benefit of the estate through the liquidation of the remaining Real Property . . . ."

In the Court's view, Foothill understood that Debtor would collect the $1.51 million at issue for the benefit of the estate. Except for the assignment, SunTrust would hold the first priority liens on the $1.51 million. Foothill would receive nothing. The Court is persuaded that Foothill cannot improve its position against the clear language of the settlement agreement. The Court is persuaded that Foothill would receive a windfall at the expense of the bankruptcy estate. The Court can only conclude that the $1.51 million at issue is not the cash collateral of Foothill.

An order in accordance with this memorandum opinion will be entered this date.