COURT OF APPEALS OF VIRGINIA

Present: Judges Willis, Annunziata and Bumgardner
Argued at Alexandria, Virginia


KEITH D. PARISH
                                              OPINION BY
v.   Record No. 0818-97-4          JUDGE ROSEMARIE ANNUNZIATA
                                           FEBRUARY 17, 1998
MARY BETH SPAULDING

          FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                      Richard B. Potter, Judge

          Raymond B. Benzinger (Benzinger & Benzinger,
          P.C., on brief), for appellant.

          (Mary Beth Spaulding, pro se, on brief).


     Keith D. Parish (father) appeals the decision of the circuit

court maintaining custody of Keith D. Parish, Jr. and Samantha N.

Parish (the children) with Mary Beth Spaulding (mother).  Father

contends mother is precluded from seeking a modification of the

earlier decree regarding custody and the relocation of the

children on the basis of changed circumstances because she

unilaterally, and contrary to court orders, created the change of

circumstances.  We disagree and affirm.

     On December 15, 1995, when both mother and father lived in

Virginia, the circuit court entered an order awarding sole

custody of the children to mother and establishing visitation

rights for father.  In the summer of 1996, mother submitted

several documents to the court which asked the court to note her

change of address, modify father's visitation rights, and allow

her to move to Indiana.  Although the circuit court denied

mother's petitions for procedural reasons and never reached the merits of the issues, mother moved to Indiana with her husband and the children. Among numerous other motions, father filed a motion for emergency change of custody.

## I.

### Change in Custody

In determining whether a change in custody is warranted, the trial court applies a two-part test: (1) whether a change of circumstances has occurred since the most recent custody award; and (2) whether such a change would be in the best interests of the child. Keel v. Keel, 225 Va. 606, 611, 303 S.E.2d 917, 921 (1983). In order "to modify a decree denying a custodial parent permission to remove the child from the state,[1] a similar standard must be applied; the court must find (1) a material change in circumstance since the initial decree; and (2) that relocation would be in the child's best interests." Bostick v. Bostick-Bennett, 23 Va. App. 527, 535, 478 S.E.2d 319, 323 (1996) (footnote added).

---

[1]"A court may forbid a custodial parent from removing a child from the state without the court's permission, or it may permit the child to be removed from the state." Scinaldi v. Scinaldi, 2 Va. App. 571, 573, 347 S.E.2d 149, 150 (1986) (citing, inter alia, Carpenter v. Carpenter, 220 Va. 299, 302, 257 S.E.2d 845, 848 (1979)). The trial court addressed this question as one factor in its determination of the best interests of the children.

A.

Change in Circumstances Created by Voluntary Act

Father argues that, because mother created the change of circumstances upon which she relies in support of her petition for modification of visitation and relocation of the children, the trial court erred in finding such change had occurred. In addressing father's claim that mother cannot rely on a changed circumstance which she created, we are guided by the principles developed in earlier decisions. In Simmons v. Simmons, 1 Va. App. 358, 362, 339 S.E.2d 198, 200 (1986), we upheld a trial court's decision to allow a parent to move to Florida following a determination that the move would be in the best interests of the child. Although we did not specifically address the changed circumstances requirement, we approved the court's examination of the best interests of the child notwithstanding the fact that the parent voluntarily chose to move. Our decision in Scinaldi v. Scinaldi, 2 Va. App. 571, 572-73, 347 S.E.2d 149, 150 (1986), as further clarified in Hughes v. Gentry, 18 Va. App. 318, 322, 443 S.E.2d 448, 451 (1994), supports our conclusion that a change in the location of the children effected by the petitioning parent does not bar the jurisdictional finding that a material change of circumstances has taken place. In Scinaldi, 2 Va. App. at 576-77, 347 S.E.2d at 152, after the custodial parent moved from Virginia, the non-custodial parent obtained an order directing her to return the children to Virginia and enjoining her from

3

moving the children.  We reversed, holding that the trial court's order was unsupported by the evidence.  The "inescapable inference of <u>Scinaldi</u> is that whenever the evidence suggests . . . that the relocation of the custodial parent may not be in the child's best interests, the relocation of the custodial parent constitutes a material change in circumstances."  <u>Hughes</u>, 18 Va. App. at 322, 443 S.E.2d at 451.  It follows from these decisions that the custodial parent's voluntary relocation of the children does not bar that parent from thereafter seeking modification of the trial court's order of custody; nor does the custodial parent's action bar a motion seeking approval of the relocation retroactively.

Furthermore, in a court's decision as to the propriety of relocating the children or the modification of custody, "the welfare of the children is of primary and paramount importance."  <u>Simmons</u>, 1 Va. App. at 361, 339 S.E.2d at 199.  If the court could not retroactively approve a move or order a change in custody after an unapproved relocation has taken place, having before it evidence that the relocation of the children or the modification of custody would be in the best interests of the children, the court would be required to act contrary to the best interests of the children.  We decline to establish such a rule.

In further support of his argument that mother is barred from showing "a change of circumstances," father asserts the doctrine of estoppel.  Father did not raise this argument in the

4

trial court and is barred from asserting it here.  Rule 5A:18. Even assuming the issue of estoppel is properly before us, the claim is without merit.  Husband acknowledges that estoppel requires a representation, reliance, a change of position, and detriment, but the record contains no evidence which proves the required elements.  Accordingly, we find mother's actions do not act as a bar to establishing a change in circumstances.

B.

Finding of Changed Circumstances

We hold that the trial court's finding of changed circumstances was not plainly wrong or unsupported by the evidence.  "The trial court's decision, when based upon an <u>ore tenus</u> hearing, is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it."  <u>Venable v. Venable</u>, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986).

"Changed circumstances" is a broad concept and incorporates a broad range of positive and negative developments in the lives of the children.  <u>Keel</u>, 225 Va. at 611–12, 303 S.E.2d at 921. The purpose of the changed circumstances requirement is to avoid the bar on relitigation that would otherwise be imposed by <u>res judicata</u>.  <u>Hiner v. Hadeed</u>, 15 Va. App. 575, 580, 425 S.E.2d 811, 814 (1993) ("In the absence of a material change in circumstance, reconsideration . . . would be barred by principles of <u>res judicata</u>.").  The circuit court found "significant changes in the

5

circumstances since the last order of this Court."  This finding is supported by the evidence, introduced by both parties, that mother had moved to Indiana.  See Hughes, 18 Va. App. at 322, 443 S.E.2d at 451.

C.

Best Interests of the Children

After making the threshold finding of a change of circumstances with respect to both the custody and relocation issues, the trial court determined that the best interests of the children required that they remain in the sole custody of mother.

In support of its finding, the court stated:

> 1) that she is now and has always been the primary care giver for the two children; 2) she offers the most stable home for the two children and the one that would offer the best opportunities for the growth and development of the children; 3) she has a good relationship with the children, as well, of course, as the new children by her second marriage; 4) she does in fact have a relationship and the children have a relationship with the new children of the second marriage; 5) she offers perhaps the most normal environment in the sense of a mother and a father being in the same household, that is, an adult male and female to raise the children; 6) this offers the opportunity, as well, to end the litigation . . . .

The court specifically found that the move to Indiana was in the best interests of the children.  In support of its finding, the court stated:

> First of all, the move to Indiana offered economic stability in the sense that Ms. Spaulding found herself in economic distress.  It offered an opportunity to live in Indiana

6

in a home that was rent-free, not unlike the same situation Mr. Parish lives in here in Virginia. Number 2, it offers economic stability, in that [mother] was in fact unemployed and [mother's] new husband lost his job in Virginia and needed to move to find full employment and so moved to Indiana. It offered some economic stability based on the fact that [father] in this case was not paying child support as ordered by the Court. Number four, in terms of an educational opportunity, it offered [mother] an opportunity, together with her new husband, for additional schooling. Number 5, in terms of educational opportunities for the children, the transfer of the children was made in the summertime so as not to interfere with the schooling of the children and did not, in fact, interfere with that schooling. Number 6, it offered some emotional stability to the children. Mr. Spaulding was allowed to return and address the issues of visitation and child support that he had outstanding in Indiana. And that offered some stability to their family environment.

On appeal from an order of child custody, we view the evidence in the light most favorable to mother, the prevailing party below. Wilson v. Wilson, 12 Va. App. 1251, 1254, 408 S.E.2d 576, 578 (1991) (citing Simmons, 1 Va. App. at 361, 339 S.E.2d at 199). The parties presented only their own testimony on the issues; thus, the court's decision was necessarily based primarily on its evaluation of the parties' credibility. It is well settled that issues of credibility and the weight of the evidence are within the unique province of the trier of fact. This Court will not substitute its judgment for the trial court's determination unless we find that the testimony relied upon by the trial court is inherently incredible. Richardson v.

7

Richardson, 242 Va. 242, 246, 409 S.E.2d 148, 151 (1991). The mother's testimony was not inherently incredible and supports the findings of the court.

Finally, we reject father's argument that, in determining whether the relocation was in the best interests of the children, the court erred in considering the best interests of mother rather than the children. It is true that some of the factors considered by the court, such as mother's educational opportunities, relate more to mother's welfare than to the specific welfare of the children. In Simmons, 1 Va. App. at 362, 339 S.E.2d at 200, however, we cited similar factors, including a stable home life and solid financial situation, as reflecting on the children's interest in a "stable and loving environment." Viewing the evidence in its totality, we find no abuse of discretion in the court's evaluation of the evidence and its determination of the best interests of the children.

## II.

### Enforcement of Orders

Father argues the trial court denied him due process by failing to enforce the juvenile court's order enjoining mother from removing the children from the Commonwealth. He further contends the juvenile and circuit courts' failure to enforce the order effected an improper modification of the order. We disagree with both claims.

On December 15, 1995, the circuit court entered an order

8

awarding sole custody of the children to mother, establishing
visitation for father, and requiring "any party intending to
change residence giving the other party and the Court at least 30
days' [sic] advance written notice of any intended change of
address, including postal zip code."  On June 12, 1996, mother,
the sole custodian of the children, filed a notice of change of
address, although the notice did not list her new address.  On
July 2, 1996, mother appeared before the circuit court, asking
the court to modify the visitation order and approve her move to
Indiana.  The court ruled that it did not have jurisdiction to
hear mother's petition, in part because an appeal was pending in
this Court.  On July 2, mother filed another notice of change of
address, which listed two "probable addresses."  Although the
circuit court never ruled that mother could leave the
Commonwealth, she nevertheless moved to Indiana with her husband
and the children.  Father filed a series of motions to enforce
the visitation provisions of the December 15, 1995 decree.

Father does not claim that the juvenile and circuit courts
erred in ruling on the merits of his claims, but only that the
courts denied him due process by failing to enforce earlier
orders.  Due process requires that, before a court may deprive a
party of a property or liberty interest, the party must receive
notice and the opportunity to be heard.  <u>Williams v. Virginia
Elec. & Power Co.</u>, 18 Va. App. 569, 576-77 and n.5, 445 S.E.2d
693, 698 and n.5 (1994).  Father received both notice of matters

9

brought before the trial court and the opportunity to be heard at length, both on his own requests for relief and those of the mother. Accordingly, we find that the courts did not deny father's right to due process.

Furthermore, a court's decision of whether and how to enforce an order is reviewed only for an abuse of discretion. Wells v. Wells, 12 Va. App. 31, 36, 401 S.E.2d 893, 894 (1991). Our review of the record reveals that the courts were responsive to each of father's requests for relief and that father's claims are without merit.[2] Accordingly, we find the courts did not abuse their discretion by failing to enforce their orders.

Finally, we reject father's argument that a court's failure to enforce its orders improperly effected a modification of its order while on appeal. He cites no authority for the espoused proposition and we find none.

_____

[2]On July 19, 1996, father moved for an emergency restraining order, which was granted by the juvenile court on July 26. On July 26, 1996, father moved for an order requiring mother to state the location and phone number of the children; the court required mother to do so on August 16, 1996. On September 9, 1996, father filed an emergency petition for a change in custody; the circuit court denied father's petition for change of custody on the basis that mother was not given proper notice and that the custody issue was before the Court of Appeals on September 27. On September 20, 1996, the court issued a Rule to Show Cause for violation of the December 15, 1995 order. The court subsequently determined that mother was not in violation of the order and dismissed the Rule. On October 24, 1996, and November 15, 1996, father moved for an order requiring cooperation with the visitation provisions of the December 15, 1995 order; the court ordered mother to do so on November 27, 1996. On December 18, 1996, father moved for an order to show cause against mother. On January 14, 1997, the court stated that it would not award any sanctions against mother.

III.

Denial of Motion to Withdraw

After father appealed the child support award entered by the juvenile court to the circuit court, the circuit court entered an order requiring the parties to set an early date to address the modification of the child custody, support, and visitation issues.  Father argues that the trial court erred in denying his motion to withdraw his appeal regarding child support.

In denying father's motion to withdraw his appeal, the trial court cited as reasons for its decision, judicial economy, prejudice to mother, and the parties' nine cases in the circuit court over the last three years.  In a subsequent hearing on the record, the court explained that the nine circuit court cases filed by the parties, as well as two appeals to this Court and numerous juvenile court cases, had separated the issues, and that "it's time for these matters to really come to a head."  On its own motion, the court consolidated the pending circuit court cases for a hearing on January 9, 1997.

Father argues that the effect of the court's denial of his motion to withdraw was that he was allowed neither time to conduct sufficient discovery nor a continuance to prepare his case.  We find no abuse of discretion in the court's denial of father's motion to withdraw his appeal and to bring this epic case to a close.  As the court observed, the numerous separate cases resulted in a fragmentation of the issues and an incomplete

11

adjudication of the matters before the court. By denying father's motion to withdraw his appeal, the court was able to consolidate the pending cases and adjudicate all pending issues. Furthermore, father fails to demonstrate how he was prejudiced by the court's order to proceed with the case in circuit court. He claims prejudice on the ground that he needed mother's updated financial information to prepare for trial. The record does not reveal, however, that father filed a discovery request for financial information or any other document requesting such information. Moreover, he fails to demonstrate how the court's decision impacted or restricted his cross-examination of mother and fails to cite any other evidence in the record that shows he could not properly prepare for trial. Finally, he makes no claim of error regarding the amount of support awarded by the circuit court.

Accordingly, for the reasons stated in this opinion, we affirm.

<u>Affirmed.</u>