ANNUNZIATA, J.,
dissenting.
I respectfully dissent from the majority’s decision. I find that the evidence in this case sufficiently supports the trial court’s finding that wife clothed her attorney with apparent authority to enter into a binding final settlement agreement on her behalf. In the context of an attorney’s authority to bind a client to an agreement or stipulation, traditional agency principles apply. See Edwards v. Born, Inc., 792 F.2d 387, 389 (3rd Cir.1986); see also Virginia Electric & Power Co. v. Bowers, 181 Va. 542, 547, 25 S.E.2d 361, 363 (1943) (noting that “an attorney is the agent of his client”). Accordingly, the attorney/agent has three types of authority under which action may *218 be taken on behalf of the chent/principal: express, implied, and apparent. Restatement (Second) of Agency § 7, 8 (1958).
A client may be bound where the attorney acted "with the apparent authority to bind the client. See Singer Sewing Machine Co. v. Ferrell, 144 Va. 395, 132 S.E. 312 (1926) (holding that the client, by her actions, clothed her attorney with apparent authority to settle her claim); Restatement (Second) of Agency § 8 (1958). In Singer, the Virginia Supreme Court described the principle of apparent authority:
“[A]s between the principal and agent and third persons, the mutual rights and liabilities are governed by the apparent scope of the agent’s authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. The apparent authority, so far as third persons are concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no obligation to inquire into the agent’s actual authority.”
144 Va. at 404, 132 S.E. at 315 (quoting J.C. Lysle Milling Co. v. S.W. Holt & Co., 122 Va. 565, 571-72, 95 S.E. 414, 415 (1918)); see also National Labor Relations Board v. Donkin’s Inn, Inc., 532 F.2d 138, 141 (9th Cir.1976) (“ ‘Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have.’ ” (citation omitted)). Therefore, if the principal, by word or act, cloaks the agent with apparent authority, third persons may rely on such authority unless “ ‘the compromise possessed such elements of intrinsic unfairness as to provoke inquiry or imply fraud.’ ” Singer, 144 Va. at 404, 132 S.E. at 315 (citation omitted).
Wife asserts that in Dawson v. Hotchkiss, the Virginia Supreme Court abandoned the principle it enunciated in Singer that a client may be bound by a settlement entered into by an attorney where the client cloaks the attorney with apparent authority. 160 Va. 577, 169 S.E. 564 (1933). Wife miscon *219 strues Dawson. In Dawson, the Court conducted an extensive factual analysis to determine whether the attorney had apparent authority to enter an agreement on behalf of the client. Dawson, 160 Va. at 582, 169 S.E. at 566. The Supreme Court concluded that, in “light of all the facts and circumstances shown by the evidence,” the attorney did not have “apparent authority to make a binding contract for [the client].” Id. at 586, 169 S.E. at 567. The Supreme Court thus affirmed the legal theory of apparent authority in the context of an attorney/client relationship, but found the evidence failed to support a finding of apparent authority in that case. Furthermore, the position enunciated in Singer and accepted in Dawson is consistent with that taken in numerous jurisdictions.[4]
*220 In accordance with agency principles, the words and conduct of wife govern the determination of whether Byrd had apparent authority to enter the Agreement on wife’s behalf. See Restatement (Second) of Agency § 27, cmt. a, b (1958) (“[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.”). The conduct of her agent, Byrd, is not material to the inquiry.
Analyzing the evidence in light of these principles, the trial court concluded that wife clothed Byrd with apparent authority to execute the agreement on her behalf:
Mrs. Walson plainly held Mr. Byrd out as having authority to negotiate this case. She authorized him to attend the October 27th meeting. All understood that she chose not to attend because of her supposed dislike of her husband, but that arrangements were made for her to communicate with her attorney during the course of that meeting. That Mr. Byrd did participate and, further, that he continually conferred with her by telephone in the course of this lengthy meeting. She did nothing to inform her former husband or his attorney of any restrictions on Mr. Byrd’s authority.
Because the trial court’s finding that Byrd had apparent authority is one of fact, see Nolde Bros. v. Chalkley, 184 Va. 553, 567, 35 S.E.2d 827, 833 (1945), we must sustain that finding unless we conclude that it is plainly wrong or without evidentiary support. Naulty v. Commonwealth, 2 Va.App. 523, 527, 346 S.E.2d 540, 542 (1986); Code § 8.01-680. “It is *221 well settled that issues of credibility and the weight of the evidence are within the unique province of the trier of fact.” Parish v. Spaulding, 26 Va.App. 566, 575, 496 S.E.2d 91, 95 (1998), aff'd, 257 Va. 357, 513 S.E.2d 391 (1999). Therefore, we “review the evidence in the light most favorable to [husband], the party prevailing below and grant all reasonable inferences fairly deducible therefrom,” Anderson v. Anderson, 29 Va.App. 673, 678, 514 S.E.2d 369, 372 (1999), and we do “not substitute [our] judgment for the trial court’s determination unless we find that the testimony relied upon by the trial court is inherently incredible,” Parish, 26 Va.App. at 575, 496 S.E.2d at 95.
I find that the evidence amply supports the trial court’s finding that wife clothed Byrd with apparent authority to enter into a final settlement agreement on her behalf. The negotiations conducted by the parties over a six-month period were manifestly characterized by Byrd acting on wife’s behalf to reach a final settlement. In May 1999, wife accompanied Byrd to the first negotiation meeting for the express purpose of obtaining an agreement on the disputed property issues. Between that meeting and the October 1999 meeting, wife consistently communicated her proposals and rejection of husband’s proposals to husband’s counsel through Byrd’s agency. These communications were made on her behalf and in her absence.
Wife acknowledged that the purpose of the October settlement negotiation meeting was to try “to resolve [the] matter” prior to the trial, which was scheduled to begin the following Monday. She admitted authorizing Byrd to attend the October meeting “on her behalf,” for the specific purpose of negotiating a settlement of all issues in dispute. To that end, wife employed Byrd to communicate her offers and rejection of counteroffers to opposing counsel and his client, a function he had filled during the six-month negotiation period.
Byrd testified that he spoke with wife on the phone concerning each issue presented at the October meeting. At the end of the meeting, Byrd had spoken with wife at least ten times, *222 and the parties had reached an agreement as to all terms except who would pay the mortgage while wife lived in the house pending its sale. Byrd left the meeting to communicate husband’s counteroffer to wife, a course he had been following throughout the afternoon. Byrd did not return to the meeting until the following day, when he communicated wife’s acceptance of husband’s counteroffer to husband’s counsel through a stipulation detailing the terms of the agreement. Both attorneys then signed the agreement.
Because wife, throughout the settlement negotiations, held out Byrd as having the authority to communicate wife’s offers and rejection of counteroffers, husband and his counsel reasonably believed that Byrd had the authority to communicate wife’s acceptance of husband’s counteroffer. See Scott v. Randle, 697 N.E.2d 60, 67 (1998) (“[Wjhen a party places an agent in the position of sole negotiator on his behalf, it may be reasonable for the third person to believe that the agent possesses authority to act for the principal. In such instance, the conduct of the principal constitutes the requisite manifestation or communication, although indirect.”).
Wife relies on Auvil v. Grafton Homes, Inc., 92 F.3d 226 (4th Cir.1996), to support her contention that the trial court erred in finding that Byrd had apparent authority to bind her to a final settlement. In Anvil, the court found that “[t]he authority to negotiate ... is far different from the authority to agree to a specific settlement.” Auvil, 92 F.3d at 230. Wife’s reliance on Anvil is misplaced. Anvil merely restates the need for evidence demonstrating that the client clothed the attorney with apparent authority to bind her to a final settlement. Id. at 230 (“An agent’s authority must be conferred by some manifestation by the principal that the agent is authorized to act on the principal’s behalf.” (emphasis in original) (citation omitted)).
In this case, wife’s actions clothed Byrd with authority to reach final settlement on her behalf. Several of the settlement proposals that wife authorized Byrd to present during the four hours of negotiations were full and complete, such *223 that, if accepted by husband, they would have bound wife to a final settlement. By her actions and conduct, wife led husband and his counsel to reasonably believe that Byrd had authority to finalize the negotiations. Byrd, thus, had apparent authority to bind wife to a final settlement agreement.
Furthermore, the parties are bound despite the fact that they did not execute a written agreement. The evidence, viewed in the light most favorable to husband, demonstrates that the parties did not contemplate that a written agreement be executed as a condition precedent to their being bound. See Richardson v. Richardson, 10 Va.App. 391, 396, 392 S.E.2d 688, 690 (1990) (“Where parties involved in contract negotiations do not expressly state that the validity of an agreement between them is subject to the preparation, approval, and signing of a formal written contract, it is a question of fact whether they intended that no contract would exist until a written agreement was executed.”). Byrd testified that a formal property settlement agreement was not intended. Rather, he and husband’s counsel had “discussed it, and just picked a method of either drafting a decree, and putting it in the decree, or doing it by stipulation, to be put into the decree.” The trial court did not credit wife’s testimony that she intended that a formal property settlement agreement be drafted and signed by both parties before either party would be bound. We are bound by the trial court’s determination of fact on this issue. Anderson, 29 Va.App. at 686, 514 S.E.2d at 376 (holding that trier of fact determines credibility of witnesses). Therefore, despite the absence of a written agreement signed by both parties, once Byrd communicated, with apparent authority, to husband’s counsel that wife had accepted husband’s counteroffer, both parties were bound. Id. at 394, 392 S.E.2d at 689.
In sum, I find that the holding in Singer that an attorney may bind his or her client to a final settlement on the basis of apparent authority remains controlling Virginia law. I also find there is sufficient evidence to support the trial court’s decision that Byrd had apparent authority to bind wife to a final settlement. Because both attorneys signed the stipula *224 tion with legal authority, wife is bound by the agreement. I, therefore, would affirm the decision of the trial court.

. Several of our sister courts have held that apparent authority is a valid legal ground for binding a client to a final settlement entered into by the client’s attorney. Columbus-America Discovery Group v. Atlantic Mut. Ins., 203 F.3d 291, 298 (4th Cir.2000) ("As a general rule, counsel of record have the apparent authority to settle litigation on behalf of their client.”); Fennell v. TLB Kent Co., 865 F.2d 498 (2nd Cir.1989); Edwards v. Born, Inc., 792 F.2d 387, 390 (3rd Cir.1986) (holding "that enforcing settlement agreements on the basis of apparent authority is consistent with the principles of agency law, the policies favoring settlements generally, and the notions of fairness to the parties in the adjudicatory process,” and remanding for a factual determination of apparent authority); Blanton v. Womancare, Inc., 38 Cal.3d 396, 212 Cal.Rptr. 151, 696 P.2d 645 (1985); Ballard v. Williams, 223 Ga.App. 1, 476 S.E.2d 783, 785 (1997) (“[A]n attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties.” (citation omitted)); Scott v. Randle, 697 N.E.2d 60, 67 (Ind.Ct.App. 1998) (finding attorney had apparent authority to execute a binding settlement agreement where clients supported attorney’s efforts to negotiate a final settlement on their behalf); Miotk v. Rudy, 4 Kan.App.2d 296, 605 P.2d 587, 591 (1980); Nelson v. Consumers Power Co., 198 Mich.App. 82, 497 N.W.2d 205, 206 (1993) (holding that "an attorney, acting solely in the interest of a client and without any improper motives, has the apparent authority to settle a lawsuit on behalf of the client.”); Rosenblum v. Jacks or Better of America West, Inc., 745 S.W.2d 754, 760-63 (Mo.Ct.App.1988); Amatuzzo v. Kozmiuk, 305 N.J.Super. 469, 703 A.2d 9 (1997); Hallock v. State, 64 N.Y.2d 224, 485 N.Y.S.2d 510, 513-14, 474 N.E.2d 1178 (1984); Kaiser Foundation Health Plan of the Northwest v. Doe, 136 Or.App. 566, 903 P.2d 375, 379 (1995) (finding that defendant had vested her attorney with apparent *220 authority to bind her to final settlement with plaintiff), modified on-other grounds, 138 Or.App. 428, 908 P.2d 850 (1996); Southwestern Bell Telephone Co. v. Vidrine, 610 S.W.2d 803 (Tex.Civ.App.1980); New England Educational Training Service, Inc. v. Silver Street Partnership, 148 Vt. 99, 528 A.2d 1117, 1119-21 (1987) (same); see also Rest, of Law Governing Lawyers § 27 (1998) ("A lawyer’s act is considered to be that of the client in proceedings before a tribunal or in dealings with a third person if the tribunal or third person reasonably assumes that the lawyer is authorized to do the act on the basis of the client’s (and not the lawyer’s) manifestations of such authorization.”).