COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, Athey and Senior Judge Haley
Argued at Fredericksburg, Virginia


HASSAN SULTAN

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0747-19-4                      JUDGE RANDOLPH A. BEALES
                                                    APRIL 28, 2020
NOSHEEN MALIK


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Bruce D. White, Judge

       Hassan Sultan, *pro se*.

       Andrew Hoffman (Solan Alzamora, PLLC, on brief), for appellee.


       Hassan Sultan (husband) and Nosheen Malik (wife) were divorced by final order of divorce

entered on April 5, 2019.  Husband owns a 93% interest of an accounting business, which the trial

court valued and included in its division of the marital estate.  On appeal, husband challenges the

trial court's valuation of the business, its reliance on wife's expert witness, and the date the trial

court chose for valuation of the parties' assets.

I.  BACKGROUND

       On appeal, we must view the evidence in the light most favorable to the party who prevailed

in the trial court on the issue being appealed (i.e., wife in this case).  See Wright v. Wright, 61

Va. App. 432, 451, 469 (2013); Brandau v. Brandau, 52 Va. App. 632, 634 (2008).

       The parties were married in June 2010 and separated on May 27, 2017.  Husband filed a

complaint for divorce on June 19, 2018.  Shortly after the parties' marriage, husband – a certified

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

public accountant – opened an accounting business titled Reckenen, Inc. (Reckenen). At the time of the evidentiary hearing on February 27, 2019, husband owned 93% of Reckenen, and his brother owned the remaining 7%.

Prior to the hearing, husband timely filed a motion pursuant to Code § 20-107.3(A) requesting that the trial court "use the date of last separation of the parties [May 27, 2017] as the valuation date for the assets." At the conclusion of the evidentiary hearing, the trial court denied husband's request to use the date of separation as the valuation date, stating, "there is certainly adequate evidence to say the first and most equitable means of determining this based upon the evidence before me is to use the hearing" date.

At the evidentiary hearing, the parties presented conflicting evidence concerning the valuation of Reckenen. Husband testified that he valued the worth of Reckenen at $0 because he was earning "less than the market or less than [his] peers" and "[t]here are no excess earnings." Both parties presented evidence through their own expert witness, each of whom was a certified public accountant and a certified valuation analyst. Both experts described three approaches or methods to determine the value of Reckenen – an asset-based approach, a market-based approach, and an income-based approach. Both experts also provided valuations of Reckenen as of two dates – May 27, 2017 (the date of the parties' separation) and September 30, 2018 (the most current date for which data was available before the hearing). For the valuation as of September 30, 2018, husband's expert, Craig Stephanson, determined a value using each approach ($28,474 using an asset-based approach, $0 using an income-based approach, and $79,000 using a market-based approach) and used an equal weighted average of each of those approaches for his ultimate valuation of Reckenen at $35,800. Stephanson calculated the total goodwill of the company to be $7,326 – 81% of which ($5,900) he attributed to personal goodwill (and thus separate property). Thus, taking 93% of the $35,800, and subtracting the

$5,900 attributable to personal goodwill, Stephanson finally concluded that the marital interest in Reckenen was $27,400.[1]

Wife's expert, Kirstine Connors, also conducted a valuation of Reckenen using the three different approaches, but opined that the asset-based approach was the most reliable. Using an asset-based approach, and attributing 30% of intangible assets to personal goodwill, Connors valued Reckenen at $135,116 as of September 30, 2018, and calculated husband's 93% interest to be $126,000. Connors valued Reckenen's worth on May 27, 2017 at $104,308, and calculated husband's 93% interest at that time to be $97,000. Of the $29,000 increase in value of husband's 93% interest in the company from the time of separation to September 30, 2018, Connors attributed $26,000 to the active efforts of husband and thus, separate property; the remaining $3,000, she attributed to passive increase, and thus marital property. Therefore, of husband's total 93% interest in Reckenen as of September 30, 2018 – $126,000 – Connors subtracted the $26,000 of growth in value that she attributed to husband's separate efforts and concluded that the marital share of the value of Reckenen on September 30, 2018 was $100,000.

At the conclusion of the hearing, the trial judge stated, "essentially as to the business to me this comes down to a battle of experts." The trial judge found Connors "to be a credible witness" and her evaluation to be "conservative and reasonable." On the other hand, the trial judge found Stephanson "came across . . . as an advocate," that "[s]ome parts of his testimony seemed to be a canned spiel," and that his analysis appeared to be result-oriented. Adopting Connors's valuation of Reckenen, the court held in the final order of divorce:

> Reckenen, Inc. has a present value for equitable distribution purposes of $135,116. Husband's 93% interest in the same is therefore equal to $126,000. Husband's separate share in the same is found to be $26,000 and the marital share is therefore $100,000.

---

[1] For the evaluation as of May 27, 2017, using the same methods, husband's expert found Reckenen's total value to be $27,300, and the marital interest to be $12,100.

The parties stipulated at trial that the marital share of Husband's business interest be apportioned equally (50% / 50%) between them.

## II. ANALYSIS

### A. Valuation of Reckenen

On appeal, husband makes a number of assignments of error. Most of his assignments of error challenge the circuit court's valuation of Reckenen.[2]

"A final decree of divorce is presumed correct, and we defer to the factual findings of the court, such as valuation of marital property, where the court took evidence *ore tenus*." Shackelford v. Shackelford, 39 Va. App. 201, 207 (2002). "When a trial court hears evidence at

---

[2] Husband's assignments of error one through six are:

>    1. The trial court erred as a matter of law by not holding that any value attributed to the overall intrinsic value of Reckenen, Inc., (i.e. Appellant's accountancy practice) as a result of the Appellant having to agree to a non-compete as a condition of a sale would be the Appellant's separate property. In so doing, the trial court erred in not properly classifying the personal goodwill versus the enterprise goodwill of Reckenen, Inc.
>    2. The trial court erred as a matter of law by not using the standard of intrinsic value in valuing Reckenen, Inc., as that is defined by Howell v. Howell, 31 Va. App. 332, 523 S.E.2d 514 (2000) and Bosserman v. Bosserman, 9 Va. App. 1, 384 S.E.2d 104 (1989).
>    3. The trial court erred in accepting an upward adjustment to cash of $20,051 made by Appellee's expert.
>    4. The trial court erred in accepting as part of its valuation of Reckenen, Inc., Appellee's expert's un-probative adjustment to Intangible Assets (i.e. Goodwill) of $67,000.
>    5. The trial court erred in accepting as part of its valuation of Reckenen, Inc., Appellee's expert's inclusion of $18,534, which represented prior distributions to the Appellant from Reckenen, Inc.
>    6. The trial court erred in accepting as part of its valuation of Reckenen, Inc., Appellee's expert's un-probative determination that 30% of the total goodwill of Reckenen, Inc. is personal and 70% is marital.

For purposes of organization, we address related assignments of error together.

an *ore tenus* hearing, its factual findings are entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support them." D'Ambrosio v. D'Ambrosio, 45 Va. App. 323, 335 (2005). "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387 (1997) (*en banc*). "Further, the fact finder is not required to accept the testimony of an expert witness merely because he or she has qualified as an expert." Id. "[O]n review the 'decision of the trial judge is peculiarly entitled to respect for he saw the parties, heard the witnesses testify and was in closer touch with the situation than the [appellate] Court, which is limited to a review of the written record.'" Ferguson v. Grubb, 39 Va. App. 549, 557 (2003) (second alteration in original) (quoting Sutherland v. Sutherland, 14 Va. App. 42, 44 (1992)). Of course, any review on appeal as to the meaning of a statute or case law is reviewed *de novo* by this Court. See Matzuk v. Price, 70 Va. App. 474, 481 (2019); Lewis v. Lewis, 53 Va. App. 528, 542 (2009).

1. Effect of Husband's Unwillingness to Sign a Non-compete Agreement in Hypothetical Sale

Husband attacks on appeal various aspects of wife's expert Kirstine Connors's valuation of Reckenen. First, husband argues about the effect of a non-compete agreement in a hypothetical sale of Reckenen. At the evidentiary hearing, Connors acknowledged that husband indicated to her that he would not sign a non-compete agreement as part of a sale of Reckenen. Connors also agreed on cross-examination that she would not recommend for a potential buyer to buy Reckenen if husband would not sign a non-compete agreement. Husband argues that "[t]he value attributable to an asset that is derived from a party entering into a non-competition agreement is that party's separate property."[3] Consequently, husband also argues that "the entire

---

[3] Husband acknowledges in his brief that there is no Virginia case law that requires such a holding.

value of the business is [husband's] personal goodwill and therefore [husband's] separate property for the purposes of equitable distribution, and therefore the trial court erred by finding and holding otherwise."

However, if husband's argument were correct, a party could have a substantial impact on the value of a business for valuation purposes (thus decreasing the marital share, when applicable) simply by stating that he would not agree to a non-compete agreement. More importantly, nothing in the record shows a pending sale or an actual offer for a purchase of Reckenen. Husband's arguments concerning his unwillingness to agree to sign a non-compete agreement are merely hypothetical. Furthermore, Connors testified that a seller's willingness to sign a non-compete agreement is not considered as part of the valuation. Therefore, the trial court did not err in refusing to consider in its valuation of Reckenen the possible effect of husband's refusal to sign a non-compete agreement based on a hypothetical sale of the business.

2. Connors's Calculations and Valuation of Intangible Assets and Goodwill

Husband also argues in his fourth and sixth assignments of error that the trial court erred in accepting Connors's valuation of Reckenen's intangible assets at $67,000 and allocation of goodwill as 30% personal (and thus separate property) and 70% enterprise (and thus marital property). Connors was recognized by the trial court as an expert in business valuation, and husband stipulated to that expertise. Connors testified that in preparing her valuation of Reckenen, she reviewed Reckenen's documents, including tax returns and account statements provided to her by husband, and she communicated with husband. Wife introduced into evidence Connors's written report detailing her calculation of the valuation of the intangible assets and goodwill. In her written report, Connors provided a detailed statement demonstrating her method of arriving at the conclusion of $67,000 as the value of the intangible assets. In addition, Connors noted in her written report that the allocation of 30% of goodwill as personal

goodwill and 70% as enterprise goodwill was "based on the valuator's professional judgment, knowledge and experience." When questioned on cross-examination, Connors stated, "The reason I used thirty percent is because it's what I've seen for a professional firm of this size in doing these types of valuations." On cross-examination, Connors also identified factors she considered in making this allocation, including that "there are numerous public accounting firms that provide the same service and are easily able to provide the same service as [husband]," that Reckenen "has a shared workspace," and that it "has a recurring revenue stream."

The trial judge, who saw the live testimony of the parties and their experts, explicitly stated that he found Connors "to be a credible witness" and her evaluation to be "conservative and reasonable." Although husband attempts to discredit Connors by noting that her valuation of Reckenen was the first valuation she had performed of an accounting firm, that fact was brought to the trial court's attention during cross-examination, and the trial court did not find it to be sufficient reason to discredit her testimony. The trial court's findings on these matters were findings of fact, and they are not plainly wrong or without evidence to support them. Therefore, on appeal, we do not disturb these factual findings of the trial judge or his reliance on the testimony of wife's expert.

### 3. Connors's Accounting of Assets

In his third and fifth assignments of error, husband argues that the trial court erred in accepting Connors's accounting of assets in a manner contrary to Reckenen's accounting. He argues that because Reckenen used an accrual basis of accounting, Reckenen's stated cash of $8,832 should have been relied upon rather than $28,883. Husband contests Connors's "upward adjustment to cash of $20,051."

Husband initially provided to Connors a Reckenen Inc. balance sheet that showed Reckenen had $8,832 in cash on September 30, 2018. A bank statement for that time period,

however, showed $28,883 in Reckenen's account.  Connors testified that, when she "noted that the bank reconciliation did not match," she "inquired of [husband], and then he emailed the bank reconciliation that did match" the amount from the bank statement.  Connors's report that was admitted into evidence included in its valuation the $28,883 in cash, noting an upward adjustment of $20,051 from the $8,832 showed by Reckenen's first accounting.  It was not plainly wrong for the trial court (or without credible evidence in the record for the factfinder) to rely on Connors's use of a bank statement and updated reconciliation provided by husband – rather than on the initially provided balance sheet.

Husband also contests Connors's "inclusion of $18,534, which represented prior distributions to [husband] from Reckenen."  As of September 30, 2018, a Reckenen accounting balance sheet showed what Connors characterized as a "shareholder receivable" of $18,534.  It is undisputed that this amount was a distribution to husband that had not yet been reported to the IRS as dividends.  Connors "considered it to be an asset of the business" that husband would need to repay to Reckenen.  Stephanson, however, testified that he "assumed that that really was just a form of, of either a salary or a dividend but in any event, it was not a receivable, an asset that someone would ever pay to own.  And so I eliminated it again from the balance sheet."

The determination of whether the $18,534 shareholder receivable should be treated as a business asset for the purpose of Reckenen's valuation was a question of fact.  See Patel v. Patel, 61 Va. App. 714, 722, 727 (2013).  The trial judge, as the factfinder, weighed the evidence and witness testimony, and, as discussed *supra*, made findings of fact and witness credibility – and in doing so, found Connors's testimony to be more credible than Stephanson's.  The trial court's inclusion of the $18,534 as an asset of Reckenen was not plainly wrong or without credible evidence in the record to support it.

4. <u>Asset-Based Method of Valuation</u>

In husband's second assignment of error, he states, "The trial court erred as a matter of law by not using the standard of intrinsic value in valuing Reckenen, Inc., as that is defined by <u>Howell v. Howell</u>, 31 Va. App. 332, 523 S.E.2d 514 (2000) and <u>Bosserman v. Bosserman</u>, 9 Va. App. 1, 384 S.E.2d 104 (1989)." In furtherance of this assignment of error, husband argues that it was error for the trial court to use an asset-based method of valuation for Reckenen since it is a service-based entity. Husband relies on this Court's decision in <u>Bosserman v. Bosserman</u>, 9 Va. App. 1 (1989), to support his argument. In particular, husband relies on the following quote from that case: "Generally, greater weight will be given to earnings factors for those companies that sell products or services, and to asset values for investment or holding companies." <u>Id.</u> at 8 n.1 (quoting <u>Bowen v. Bowen</u>, 473 A.2d 73, 77 (N.J. 1984)). However, that quote must be read in its full context. The sentence in the opinion which precedes that footnote states that "there are many methods available for valuing stock in a closely held corporation." <u>Id.</u> at 8. In addition, the first sentences of the footnote state, "There is no uniform rule for valuing stock in closely held corporations. The valuation method must be tailored to meet the particular needs of each case." <u>Id.</u> at 8 n.1.

Husband also argues that this Court's decision in <u>Howell v. Howell</u>, 31 Va. App. 332 (2000), supports his position. However, contrary to supporting husband's position that use of an asset-based method of valuation was improper here, our opinion in <u>Howell</u> states that "the particular method of valuing and the precise application of that method to the singular facts of the case must vary with the myriad situations that exist among married couples." <u>Id.</u> at 339. This Court's opinion further adds that "the value of property is an issue of fact, not of law," and notes that "[t]he evidence presented at trial determines the result, and the result may vary from case to case as the evidence differs." <u>Id.</u> at 340.

Therefore, contrary to husband's assertion, the law does not actually support husband's position, and the trial court was *not* required to adopt an income-based approach to determine Reckenen's value simply because it provides services. In fact, Craig Stephanson, husband's own expert, did not adopt an exclusively income-based approach in conducting his valuation of Reckenen. The trial court, as factfinder, relied on credible evidence in the record in determining the value of Reckenen, and, on appeal, we cannot say it was plainly wrong in ruling as it did.

In short, husband takes issue with the trial court's reliance upon wife's expert in its valuation of Reckenen. As the trial court noted, the valuation of Reckenen "comes down to a battle of experts." The trial court, as factfinder, saw and listened to the experts, considered the evidence in the record, and found Connors (wife's expert) to be more credible than Stephanson (husband's expert). On appeal, we cannot say the trial court was plainly wrong in ruling as it did as we do not reweigh the evidence so as to enter the province of the factfinder. See Thomas v. Thomas, 40 Va. App. 639, 644 (2003); Parish v. Spaulding, 26 Va. App. 566, 575 (1998).

### B. Date of Valuation[4]

On February 5, 2019, husband timely filed a motion pursuant to Code § 20-107.3(A) requesting that the trial court "use the date of last separation of the parties [May 27, 2017] as the valuation date for the assets." See Code § 20-107.3(A) ("Upon motion of either party made no less than 21 days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used."). At the conclusion of the evidentiary hearing, the trial court denied husband's motion, stating that "there is certainly adequate evidence to say the first and most equitable means of determining this based upon the

---

[4] Wife argues that husband's last two assignments of error were not preserved for consideration on appeal. We disagree, and find that these objections by husband were raised with sufficient specificity in the trial court to be considered on appeal.

evidence before me is to use the hearing" date. On appeal, husband argues in his seventh assignment of error that the trial court erred in denying his motion for an alternate valuation date.

"On appeal, we review the court's determination of a valuation date for abuse of discretion." Wright, 61 Va. App. at 463 (quoting Thomas, 40 Va. App. at 647). "[O]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred." Id. at 463-64 (alteration in original) (quoting Robbins v. Robbins, 48 Va. App. 466, 482 (2006)).

Code § 20-107.3(A) establishes a presumption that the date of the evidentiary hearing should be used as the date of valuation of the parties' property. Code § 20-107.3(A) ("The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue."). See also Shooltz v. Shooltz, 27 Va. App. 264, 270-71 (1998). However, the statute also allows the circuit court to depart from that presumption "for good cause shown, in order to attain the ends of justice." Code § 20-107.3(A). As the moving party, husband, therefore, bore the burden of showing why the trial court should use the date of separation as the valuation date, instead of the date of the evidentiary hearing. The trial judge expressly addressed husband's motion and denied it, finding that the "most equitable means of determining this based upon the evidence before me is to use the hearing" date. "[W]e rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case" in deciding what is the proper date for valuation, and we cannot say that the trial judge abused his discretion here in making the finding that it should be the date of the evidentiary hearing. Wright, 61 Va. App. at 463 (quoting Robbins, 48 Va. App. at 482).

### C. Statements by the Trial Judge and Witness Credibility

Husband's final assignment of error focuses on a number of different statements made by the trial judge during his ruling from the bench and attacks those statements as erroneous findings of fact. We address each statement in turn.

First, husband criticizes the trial judge's statement, "I wondered whether or not there is more good will, personal good will to accompany what would be called Hassan Sultan CPA as opposed to a company that does business as a corporate name." The judge also stated that the parties did not specifically address that matter. Consequently, this was not a finding of fact, but a statement to the parties as to something the judge potentially would have taken into consideration if the parties had presented evidence on it.

Second, husband criticizes the trial judge's statement providing an example of what may be personal goodwill – a Virginia Military Institute graduate who has clientele among other VMI graduates because of a strong loyalty and affinity among other graduates of that same institution of higher education. Certainly, saying this was not making a finding of fact; the trial judge was simply giving an example of something that might be attributed to personal goodwill.

In short, these first two statements were not findings of fact and will not be reviewed as such.

Husband next focuses on two statements by the trial judge in relation to husband's expert, Craig Stephanson, and argues that it was error for the trial court to not give proper credit to his expert. The trial judge stated that Stephanson's analysis seemed to him to be result-oriented and "that may be because to some extent the name of his company is Valuation Services." The trial judge went on to contrast Stephanson with Connors, in whom the judge said that he "did not find that type of perceived bias." The judge also stated, "Husband's witness, in my view, had no clue whether he had reviewed" the amended tax returns or not. These statements by the trial judge show some of the factors he took into account as he judged the credibility of the witnesses. As noted *supra*, issues regarding the credibility of witnesses are solely in the province of the factfinder and are not reweighed on appeal. See Thomas, 40 Va. App. at 644; Ferguson, 39 Va. App. at 556-57; Parish, 26 Va. App. at 575. The trial judge determined that the testimony of husband's expert

- 12 -

was not as credible as the testimony of wife's expert, and we cannot say on appeal that the trial judge was plainly wrong (or without credible evidence) to make such a finding of credibility.

### D. Request for Attorney's Fees and Costs on Appeal

Both husband and wife request an award of attorney's fees incurred during this appeal. We deny both parties' requests. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 694-95 (1994).

### III. CONCLUSION

In short, findings of valuation are essentially findings of fact, and we cannot say now on appeal that the trial court erred in its valuation of Reckenen. On this issue, which the trial court referred to as a "battle of experts," the parties both presented expert testimony. The trial judge, as factfinder, made credibility determinations, weighed the evidence, and ultimately found wife's expert to be more credible in her testimony than husband's expert was in his testimony. Given the record before us, we cannot say that the trial judge's findings of fact were plainly wrong or that they failed to be based on credible evidence.

We also cannot find that the trial judge abused his discretion in his selection of a valuation date. Code § 20-107.3(A) establishes a presumption that the date of the evidentiary hearing be used as the date of the valuation of property. That statute allows for the trial court to depart from that presumption "for good cause shown, in order to attain the ends of justice." Code § 20-107.3(A). Here, the trial judge denied husband's motion to use the date of separation of the parties as the date of valuation, concluding that the "most equitable means of determining this based upon the evidence before me is to use the hearing" date. We simply cannot find that the trial judge erred in using the presumption provided by statute.

For all of these reasons, we affirm the judgment of the circuit court.

Affirmed.